ROBIA HOLDING CORPORATION, Appellant, *v.* JAMES J. WALKER, as Mayor of the City of New York, et al., Respondents.

(Argued September 30, 1931; decided November 17, 1931.)

*Louis J. Altkrug* and *Louis B. Eppstein* for appellant. The right to establish and collect tolls for the use of bridges and tunnels is a franchise, a sovereign prerogative of the State, and vests in a person or a corporation, whether municipal or private, only when, and only so far as, granted by the State Legislature. (*Clark* v. *City of Des Moines*, 19 Iowa, 199; *Toll Bridge Co.* v. *Estill County*, 210 Ky. 170; *Ft. Smith Light T. R. Co.* v. *Williams*, 149 Ark. 159; *Brethitt County* v. *Hammonds*, 150 Ky. 502; *Peru Turnpike Co.* v. *Peru*, 91 Vt. 295; *Fort Plain Bridge Co.* v. *Smith*, 30 N. Y. 44; *Brooklyn City Ry. Co.* v. *Whalen*, 191 App. Div. 737; *Browne* v. *City of New York*, 241 N. Y. 96.) The city of New York has never been authorized or empowered to establish and collect tolls for the use of bridges or tunnels except where such power was expressly delegated to it by the Legislature. (*City of Pineville* v. *Pineville Bridge Co.*, 179 Ky. 375; *Brooklyn City Ry. Co.* v. *Whalen*, 191 App. Div. 737; *Browne* v. *City of New York*, 241 N. Y. 96.) The Home Rule amendment to the Constitution and the City Home Rule Law have not changed the situation. (*Browne* v. *City of New York*, 241 N. Y. 96; *Brooklyn City Ry. Co.* v. *Whalen*, 191 App. Div. 737; *Matter of McCoy* v. *Apgar*, 241 N. Y. 71; *Adler* v. *Deegan*, 251 N. Y. 467; *City of New York* v. *Village of Lawrence*, 225 App. Div. 1; 250 N. Y. 425.)

*Arthur J. W. Hilly*, Corporation Counsel (*William E. C. Mayer* and *J. Joseph Lilly* of counsel), for respondents. The city of New York is empowered to adopt a local law and other municipal ordinances and resolutions providing for the fixation of tolls and charges for the use by vehicles and pedestrians of bridges or tunnels to be

constructed, maintained and operated by the city at the public expense. (Const. N. Y. art. 12, § 3; City Home Rule Law, § 11; *Browne* v. *City of New York*, 241 N. Y. 96; *Matter of Mayor of New York* [*Elm Street*], 246 N. Y. 72; *City of New York* v. *Village of Lawrence*, 250 N. Y. 429; *Alder* v. *Deegan*, 251 N. Y. 467; *Brooklyn City Ry. Co.* v. *Whalen*, 191 App. Div. 737; 229 N. Y. 570; *United Soc.* v. *Eagle Bank*, 7 Conn. 456; *Waterford Turnpike* v. *People*, 9 Barb. 161; *People ex rel. Savings Bank* v. *Butler*, 147 N. Y. 164; *Topham* v. *Interurban St. Ry. Co.*, 96 App. Div. 323; *Osborne* v. *International Ry. Co.*, 226 N. Y. 421; *Gubner* v. *McClellan*, 130 App. Div. 716; *Matter of McAneny* v. *Board of Estimate*, 232 N. Y. 377; *Fort Plain Bridge Co.* v. *Smith*, 30 N. Y. 44; *People ex rel. Lehigh V. Ry. Co.* v. *Tax Comm.*, 247 N. Y. 9; *Matter of State of New York*, 70 Misc. Rep. 72; *Schieffelin* v. *Goldsmith*, 253 N. Y. 243.)

LEHMAN, J. The Board of Estimate and Apportionment of the city of New York has, by resolution adopted on or about March 15, 1929, determined that a bridge connecting the boroughs of Manhattan, The Bronx and Queens and a tunnel connecting the boroughs of Brooklyn and Queens, should be constructed at the public expense, and has directed the Comptroller to issue corporate stock or serial bonds of the city of New York " for the purpose of providing the necessary means for the construction of the said tri-borough bridge and the said tunnel at the public expense." Thereafter and on June 27, 1929, it adopted a second resolution providing that " subject to the concurrence herein of the Board of Aldermen and pursuant to the provisions of Section 169 of the Greater New York Charter the Comptroller be and hereby is authorized to issue, in the manner provided by section 169 of the Charter, corporate stock in an amount not exceeding three million dollars * * * the proceeds to the amount of the par value thereof to be

used by Department of Plant and Structures for prepara-
tion of plans and construction (partial appropriation)
for the Triborough Bridge connecting the Boroughs of
Manhattan, The Bronx and Queens." The Board of
Aldermen thereafter by ordinance concurred in this
resolution.

Section 169 of the Greater New York Charter (Laws
1901, ch. 466, as amd. L. 1916, ch. 615, § 2) provides for
the issue of corporate stock and serial bonds for " revenue-
producing " improvements. That term is declared in the
same section to be applicable " to that class of improve-
ments * * * the expenditure for which shall, at the
time it is authorized, be determined by the board of
estimate and apportionment to have a substantial
* * * prospective earning power." The Board of
Estimate and Apportionment has formally made such a
determination in its resolution. Only through tolls or
charges exacted for the use of the proposed bridge or
tunnel can such improvements have any substantial
prospective earning power. Claiming that the city is
without power to exact such tolls or charges, this plaintiff
has, in a taxpayer's action, challenged the validity of
the resolution and ordinance authorizing the issue of the
bonds. The courts below have passed upon the merits
of the challenge without regard to the form of action
in which the challenge is offered. We follow the same
course.

After the Board of Estimate and Apportionment had
adopted its resolution of March 15, 1929, determining
that the bridge and the tunnel should be constructed as
" revenue-producing public improvements," the Municipal
Assembly, in accordance with a suggestion contained in
the resolution, passed two local laws which purported
to give to the Board of Estimate and Apportionment
power " to establish and fix such charges and tolls as it
may deem convenient or necessary for the operation and
maintenance " of the proposed bridge and tunnel. If

these local laws constitute a valid exercise of a legislative power conferred upon the city of New York under the " Home Rule " amendment to the Constitution (Const. art. 12, § 3) and the statutes adopted by the Legislature to carry out its purpose, then there can be no doubt that the city of New York may charge rates and tolls for the use of the proposed bridge and tunnel, and may issue bonds to provide for the cost of their construction as " revenue-producing improvements."

This court has pointed out that under the City Home Rule Law (Cons. Laws, ch. 76), local laws may be enacted by a city only where they " touch the city's property, affairs or government in one or more of certain enumerated ways." (Browne v. City of New York, 241 N. Y. 96, 119.) There we said: " Under the Home Rule Law, the city may redistribute its powers among its officers and employees. For the better execution of those powers, it may at times create instrumentalities that have been theretofore unknown. It may not transform its own powers under the guise of an amendment of the powers of its agents " (p. 121). Because of that distinction, this court held that a local law is ineffective if its purpose or effect is to confer upon an agent or officer of the city a power which the Legislature has denied to the city itself. We must apply the same test here.

In the opinion in which this court formulated the test, it pointed out that the line of division " will at times be hard to draw, for the two classes shade into each other " (p. 120). Since a municipal corporation performs its functions through its officers and agents, a statutory enlargement or limitation of the powers and functions of the instrumentalities created to perform the corporate functions may in effect enlarge or limit the corporate functions of the city. So long as the Legislature had sole and exclusive authority both to confer corporate powers on a municipal corporation and to distribute such powers among its officers or employees, such distinctions carried

no practical consequences. Where the court could discern in the language of the statute a legislative intent that the city might exercise a particular power, it was immaterial whether the power was conferred directly upon the city by express terms or indirectly, and by necessary implication, from a grant of power to a municipal officer. When the legislative authority was divided and authority conferred upon the city to pass local laws relating to the powers and duties of its officers and employees, but not to enlarge its own corporate functions, the distinction marks the line between the field which is still reserved to the Legislature and the field in which legislative authority has been conferred upon the city.

In *Browne* v. *City of New York* (*supra*) the line was plainly marked. The purpose of the local legislation was to confer upon an agent of the city a power which, as the courts had previously decided, was not conferred upon the city by the Greater New York Charter, or by any other statute. (*Brooklyn City R. R. Co.* v. *Whalen*, 191 App. Div. 737; affd., 229 N. Y. 570.) The Legislature had, indeed, consistently denied this power to the city.

In the case now under consideration, the Legislature has not in express terms conferred upon the city the right to charge rates or tolls for bridges or tunnels which it is authorized to construct and operate, and the courts have not heretofore decided whether that power is granted by fair implication. The Legislature has never refused to grant such power to the city. On the contrary, after the city had passed the local laws which purported to confer upon a city instrumentality authority to fix charges and tolls for bridges and tunnels, the Legislature in at least two statutes unequivocally recognized the power of the city and its officials to fix such charges and tolls. (Laws of 1930, chs. 373, 437.)

Unquestionably, the Legislature still has authority, under the methods provided in Home Rule amendment

to the Constitution, to pass laws conferring such power upon the city. An unequivocal recognition by the Legislature of the power of a governmental agent to authorize the collection of tolls or charges on a bridge may constitute an implied grant of such power. (See *Irvine Toll Bridge Co.* v. *Estill County*, 210 Ky. 170.) Certainly it may constitute an adoption of the local law even if the local law originally exceeded the powers of the municipality. A majority of the Appellate Division placed their decision sustaining the validity of the proposed bond issue on that ground.

We prefer to place our decision upon the broader ground that the local laws were valid at their inception. Though the Legislature, under the Constitution, may still confer new powers upon a city, the method of the exercise of that power is subject to restrictions imposed by the Constitution. The courts below have held that the Legislature has acted in accordance with those restrictions. We do not now decide that question. At least these statutes represent a legislative construction of the statutory powers of the city. Such construction is not binding upon the courts if they disagree with that construction. Here we agree with the legislative interpretation.

The Legislature has expressly conferred upon the city, acting through the Board of Aldermen, power to build bridges over, and tunnels under any stream or waterway within or adjoining the limits of the city, and to authorize the issue of bonds for that purpose. (Greater New York Charter, § 47.) The Legislature has also expressly granted to every city power " to establish, construct and maintain, operate, alter and discontinue bridges, tunnels and ferries, and approaches thereto." (General City Law; Cons. Laws, ch. 21, § 20, subd. 9.) It has never in express terms granted to the city power to impose charges for the use of bridges, tunnels and ferries. The problem in this case is whether it has done so by implication.

Many authorities, judicial and extra-judicial, have been

cited to us for the rule that a legislative grant to a municipal corporation of power to impose charges for the use of any highway or part of a highway, which it is authorized to construct and maintain for the public use, must rest upon unequivocal language clearly expressing a legislative intent. Grants by the State even to a civil division of the State must, it is said, be strictly construed. The rule may constitute a valid canon of construction, a guide in judicial search for legislative intent, but it can never be applied to defeat a legislative intent when that is found. No corporation, public or private, may exercise powers not granted by the State, and the words of a grant may not be extended beyond their fair intendment — neither may they be restricted in manner to defeat such intendment. In the construction of statutes, as well as contracts, " the law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal." (*Wood* v. *Duff-Gordon*, 222 N. Y. 88, 91.) What is expressed, even in a grant by the sovereign, includes all that is reasonably implied in the language used. (See *Peru Turnpike* v. *Peru*, 91 Vt. 295.) A power to construct and maintain a highway may by fair intendment include the right to build bridges as part of the highway. It would not by fair intendment include a power to charge tolls upon a bridge which has become part of such highway. (3 Dillon on Municipal Corporations, § 1158, and cases there cited.) Perhaps even where the Legislature has granted to a city express power to construct and operate bridges, authority to pay for such bridges out of tolls or charges is not necessarily implied; yet the power expressly granted may be so phrased that even he who runs may read in the language used a clear intention to include subsidiary powers appropriate to its exercise. The language used must be construed in accordance with its purpose and plain intent. No arbitrary rule can limit or extend the effect of the language used beyond its intendment when

that intendment plainly appears in the light of all surrounding circumstances.

Here the power conferred upon the city by its charter to construct and operate bridges and tunnels was, as we have pointed out, combined with a power to provide for the cost of bridges and tunnels so constructed by the issue of municipal bonds. (§ 47.) The power to issue bonds for such improvements is so regulated by the provisions of section 169 of the Greater New York Charter that it could not be effectively exercised unless such improvements were " revenue-producing." It cannot be, and is not, disputed that, when the Legislature adopted those sections of the charter, it contemplated that tolls and charges would be imposed for the use of any bridge erected by the city out of funds provided by bond issues. It is said, however, that the Legislature may have intended that before any bonds could be issued to provide for the construction of a particular bridge, authority must be obtained from the Legislature to exact charges upon the proposed bridge. Such constructions would impute to the Legislature an intention to make its grant of authority illusory.

We find no reason for imputing to the Legislature so extraordinary an intention. Before the Greater New York Charter was enacted, the Legislature had authorized the construction of two great bridges to connect two boroughs of Greater New York — though at that time they were separate cities. Because they were separate cities, it was found expedient to create for their erection and operation new quasi-public corporations, and the Legislature in creating such corporations gave them express authority to exact tolls and charges. (Laws of 1875, ch. 300; Laws of 1895, ch. 789, as amd. by Laws of 1896, ch. 612.) After the greater city was formed, the powers of these specially created instrumentalities were conferred by the city charter upon the city acting through its Commissioner of Plant and Structures. The

Legislature thus recognized that the power to charge tolls upon great bridges connecting two boroughs of the city was, at least, appropriate in connection with a power to construct and operate bridges. We cannot find any ground for the conclusion that the Legislature intended to withhold such power from the city when it built and operated new bridges.

If there were doubt about the legislative intent, it would be, in great measure, dissipated by the provision of the General City Law, conferring upon cities power to " establish, construct and * * * operate * * * bridges, tunnels and ferries." (§ 20, subd. 9.) Certainly in the operation of ferries, if not of bridges and tunnels, a charge or toll is a usual, perhaps universal, custom, and it would be unreasonable to hold that in granting to cities the power to operate ferries as well as bridges or tunnels, the Legislature intended to withhold power to charge for their use. Other sections of the charter and other statutes throw little further light upon the legislative intent to include in the power to construct and operate bridges and tunnels the power to charge rates and tolls. We conclude that the legislative intent is clear, and we are fortified in our conclusion by the legislative recognition in recent statutes that in the local laws the city has regulated the exercise of powers conferred upon it by the sovereign State, and has not indirectly sought to confer upon itself powers denied to it by the sovereign.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.