QUAKER OATS COMPANY, Respondent, *v.* CITY OF NEW YORK et al., Appellants.

HILL PACKING COMPANY, Respondent, *v.* CITY OF NEW YORK et al., Appellants.

Argued June 10, 1946; decided July 23, 1946.

528

*John J. Bennett, Corporation Counsel (Stanley Buchsbaum* and *Seymour B. Quel* of counsel), for appellants. I. The Sanitary Code provision involved is a valid exercise of the police power. It does not improperly interfere with interstate commerce. It is adequately definite and does not deny the equal protection of the laws. II. There is no basis for granting a declaratory judgment to the plaintiff. It has failed to show any actual controversy upon which such a judgment could be granted. (*Headley* v. *City of Rochester,* 272 N. Y. 197; *Matter*

*of State Industrial Commission,* 224 N. Y. 13; *Continental Baking Co.* v. *Woodring,* 286 U. S. 352; *Highland Farms Dairy* v. *Agnew,* 300 U. S. 608.) III. The Sanitary Code provision dealing with horseflesh intended for animal feed does not unlawfully interfere with interstate commerce. It in no way conflicts with the specific terms or the general policy of Federal law or regulation. (*Missouri Pacific R. Co.* v. *Norwood,* 283 U. S. 249; *Chicago, R. I. & Pac. Ry. Co.* v. *Arkansas,* 219 U. S. 453; *Missouri, Kansas & Texas Railway* v. *Haber,* 169 U. S. 613; *Reid* v. *Colorado,* 187 U. S. 137; *Kelly* v. *Washington,* 302 U. S. 1; *Crossman* v. *Lurman,* 192 U. S. 189; *Sligh* v. *Kirkwood,* 237 U. S. 52; *Allen-Bradley Local* v. *Wisconsin Employment Relations Board,* 315 U. S. 740; *Sinnot* v. *Davenport,* 22 How. [U. S.] 227; *Townsend* v. *Yeomans,* 301 U. S. 441.) IV. Where State action is attacked as contrary to the commerce clause, whether or not Federal legislation is involved, it must meet the test of reasonableness. It is sufficient that the State regulation be reasonable and that the burden of showing unreasonableness is on the one challenging its validity. (*Chicago, R. I. & Pac. Ry. Co.* v. *Arkansas,* 219 U. S. 453; *Nashville, etc. Ry.* v. *White,* 278 U. S. 456; *Savage* v. *Jones,* 225 U. S. 501; *Sligh* v. *Kirkwood,* 237 U. S. 52; *Armour & Co.* v. *North Dakota,* 240 U. S. 510; *S. C. State Hwy. Dept.* v. *Barnwell Bros.,* 303 U. S. 177; *Detroit Bridge Co.* v. *Tax Board,* 287 U. S. 295; *Reid* v. *Colorado,* 187 U. S. 137.) V. The Sanitary Code provision is not inconsistent with the terms or policy of the Federal statutes or regulations in effect at the time of the trial. (*Savage* v. *Jones,* 225 U. S. 501; *Corn Products Refg. Co.* v. *Eddy,* 249 U. S. 427; *Fougera & Co.* v. *City of New York,* 224 N. Y. 269; *Atchison Ry.* v. *Railroad Comm.,* 283 U. S. 380.) VI. The State may add to the labeling requirements of the Federal law or regulation. (*Savage* v. *Jones,* 225 U. S. 501; *Corn Products Refg. Co.* v. *Eddy,* 249 U. S. 427.) VII. The Sanitary Code provision does not constitute an unreasonable interference with interstate commerce. (*Chicago, R. I. & Pac. Ry. Co.* v. *Arkansas,* 219 U. S. 453; *Nashville, etc. Ry.* v. *White,* 278 U. S. 456; *Plumley* v. *Massachusetts,* 155 U. S. 461; *Crossman* v. *Lurman,* 192 U. S. 189; *Armour & Co.* v. *North Dakota,* 240 U. S. 510; *Terminal Railroad Assn.* v. *Brotherhood of Railroad Trainmen,* 318 U. S. 1; *Erie R. R. Co.* v.

*Williams,* 233 U. S. 685; *Continental Baking Co.* v. *Woodring,* 286 U. S. 352; *Federation of Labor* v. *McAdory,* 325 U. S. 450; *Headley* v. *City of Rochester,* 272 N. Y. 197; *O'Kane* v. *State of New York,* 283 N. Y. 439; *Schieffelin* v. *Goldsmith,* 253 N. Y. 243.) VIII. The Sanitary Code provision is designed to prevent fraud and constitutes a proper exercise of the police power. It does not deny equal protection of the laws. (*People* v. *Perretta,* 253 N. Y. 305; *People* v. *Luhrs,* 195 N. Y. 377; *People* v. *Kibler,* 106 N. Y. 321; *People* v. *Blanchard,* 288 N. Y. 145; *National Fertilizer Assn.* v. *Bradley,* 301 U. S. 178; *Heath & Milligan Co.* v. *Worst,* 207 U. S. 338; *Petersen Baking Co.* v. *Bryan,* 290 U. S. 570; *Carolene Products Co.* v. *United States,* 323 U. S. 18; *Plumley* v. *Massachusetts,* 155 U. S. 461; *People* v. *Arlen Service Stations,* 284 N. Y. 340.) IX. The Sanitary Code provision is clear and definite. The delegation of power involved is not unlimited; it is confined by an adequately definite standard. (*People* v. *Blanchard,* 288 N. Y. 145; *Hy Grade Provision Co.* v. *Sherman,* 266 U. S. 497; *Nash* v. *United States,* 229 U. S. 373; *Miller* v. *Strahl,* 239 U. S. 426; *Omaechevarria* v. *Idaho,* 246 U. S. 343; *Chaplinsky* v. *New Hampshire,* 315 U. S. 568.)

*Charles H. Tuttle* and *Gerald J. Craugh* for respondent in first action. I. As regards plaintiff's product the ordinance (subd. 4) is void as an unconstitutional interference with lawful interstate commerce,— and particularly an interference with the Federal scheme governing interstate commerce in this very product. The constitutional power of Congress over interstate commerce is plenary; and when exercised over a given subject matter or in a given field, it is exclusive. Any attempt to govern such subject matter or field by a restrictive municipal license or its equivalent, is inadmissible. (*Collins* v. *New Hampshire,* 171 U. S. 30; *Schollenberger* v. *Pennsylvania,* 171 U. S. 1; *Cloverleaf Butter Co.* v. *Patterson,* 315 U. S. 148; *Hill* v. *State of Florida,* 325 U. S. 538; *Charleston & Car. R. R.* v. *Varnville Co.,* 237 U. S. 597; *Erie R. R. Co.* v. *New York,* 233 U. S. 671.) II. Subdivision 4 is also invalid and void as indefinite, unequipped with ascertainable standards, and employing a fictitious term without any accepted or ascertainable meaning, and as a delegation of undefined, legislative and arbi-

trary power to administrative officers. (*Matter of Small* v. *Moss*, 279 N. Y. 288; *Matter of Lyons* v. *Prince*, 281 N. Y. 557; *Acorn Employment Service, Inc.*, v. *Moss*, 292 N. Y. 147; *People* v. *Briggs*, 193 N. Y. 457; *United States* v. *Cohen Grocery Co.*, 255 U. S. 81.) III. Subdivision 4 is also void as arbitrary and unreasonable and as violative of the guarantees of due process and equal protection in both the Federal and State Constitutions. (*Aerated Products Co.* v. *Godfrey*, 290 N. Y. 92; *Good Humor Corp.* v. *City of New York*, 290 N. Y. 312; *Weaver* v. *Palmer Bros. Co.*, 270 U. S. 402; *People* v. *Guiton*, 210 N. Y. 1.) IV. The amendment made in 1945 to the Federal Regulations only emphasizes the intention of the Federal Government to establish a uniform scheme in the matter of dog food. The plaintiff's product is in full conformity therewith.

*Arnold J. Brock* and *William P. Balabon* for respondent in second action. I. Subdivision 4 of section 327 of the Sanitary Code, as amended, is unconstitutional and void because it is prohibitory. (*Schollenberger* v. *Pennsylvania*, 171 U. S. 1; *Plumley* v. *Massachusetts*, 155 U. S. 462; *Collins* v. *New Hampshire*, 171 U. S. 30; *Good Humor Corp.* v. *City of New York*, 290 N. Y. 312; *Adams* v. *Tanner*, 244 U. S. 590.) II. Subdivision 4 of section 327 of the Sanitary Code, as amended, is unconstitutional and void because it is an unlawful interference with and an undue burden upon interstate commerce. (*Savage* v. *Jones*, 225 U. S. 501; *McDermott* v. *Wisconsin*, 228 U. S. 115; *Napier* v. *Atlantic Coast Line*, 272 U. S. 605; *Houston, Texas Ry.* v. *United States*, 234 U. S. 342; *Hines* v. *Davidowitz*, 312 U. S. 52; *Hill* v. *State of Florida*, 325 U. S. 543; *Charleston & Car. R. R. Co.* v. *Varnville Co.*, 237 U. S. 597; *McDermott* v. *Wisconsin*, 228 U. S. 115; *Oklahoma* v. *Wells, Fargo & Co.*, 223 U. S. 298.) III. Subdivision 4 of section 327, as amended, is unconstitutional and void because it is unreasonable. (*Weaver* v. *Palmer Bros. Co.*, 270 U. S. 402; *Smith* v. *Cahoon*, 283 U. S. 553.) IV. The ordinance is arbitrary and indefinite. (*People* v. *Klinck Packing Co.*, 214 N. Y. 121; *Fifth Ave. Coach Co.* v. *City of New York*, 194 N. Y. 19.)

FULD, J. In each of these actions for declaratory judgment, the question posed involves the constitutionality of an ordinance of the City of New York governing and regulating the sale of

horse meat intended for animal feed. The courts below held it invalid as an unlawful interference with interstate commerce.

In 1943, subdivision 4 of section 327 of the Sanitary Code of New York City was amended to read as follows: " 4. Horse-flesh, whether alone or combined with other ingredients, intended for animal feed shall not be brought into The City of New York, transported, or held, kept, stored, or offered for sale or sold unless decharacterized by harmless coloring or otherwise in a manner and with materials satisfactory to the Department of Health. This provision, however, shall not apply to horseflesh sold and transported to the New York Zoological Society or the Park Department of The City of New York." Violation of its provisions is punishable as a misdemeanor (Penal Law, § 1740; New York City Charter, § 558, subd. d; New York City Administrative Code, § 564-6.0), and, in addition, perhaps subjects the offending product to confiscation (Sanitary Code, § 137).

Both the Hill Packing Company and the Quaker Oats Company are engaged in the preparation of horse meat and in its sale throughout the country — the former from its plant in Kansas, the latter from its factory in Illinois. The product of the Hill Company, frozen and packaged in cartons, is intended for both animal use and human consumption; the product of the Quaker Oats Company, known as " Ken-L-Ration," packaged in hermetically sealed containers, is sold only as dog food. Labels on each company's product proclaim it horse meat and announce that the product has been inspected and approved by the Federal Government.

The Hill Company was advised by the city's department of health that it would have to decharacterize its product by adding either " ground bone " or some other ingredient, such as cod liver oil, coal tar dye, granular charcoal, or some harmless vegetable coloring. The city had advised the Quaker Oats Company that it might decharacterize its product by adding ground bone — as the concern indicated it planned doing — or by some other method.

It is well established that the commerce clause does not itself preclude a State — or a municipality (*Cuyahoga River Power Co.* v. *Akron*, 240 U. S. 462) — from enacting legislation, in the exercise of its police power, regulating matters which affect

interstate commerce. (STONE, C. J., concurring, *Hill* v. *Florida,* 325 U. S. 538, 544; *Southern Pacific Co.* v. *Arizona,* 325 U. S. 761, 766–767.) Equally settled is the rule that, even if the Federal Government has legislated in a particular field, local regulation in that field is not necessarily prohibited unless national uniformity is essential. The State or municipal statute will be stricken only if — in terms or in practical administration — it conflicts with the Federal law or infringes on its policy. (*Southern Pacific Co.* v. *Arizona, supra,* at p. 766; *Hill* v. *Florida,* 325 U. S. 538; *Union Brokerage Co.* v. *Jensen,* 322 U. S. 202; *Cloverleaf Co.* v. *Patterson,* 315 U. S. 148; *Allen-Bradley Local* v. *Board,* 315 U. S. 740; *Kelly* v. *Washington,* 302 U. S. 1; *Townsend* v. *Yeomans,* 301 U. S. 441; *Gilvary* v. *Cuyahoga Valley Ry. Co.,* 292 U. S. 57; *McDermott* v. *Wisconsin,* 228 U. S. 115; *Savage* v. *Jones,* 225 U. S. 501.)

Differentiation between cases where the assumption of Federal powers is exclusive and where it is not, is narrow, but the line has been drawn by the Supreme Court in a number of closely comparable cases dealing with the constitutionality of local legislation governing the preparation and sale of foodstuffs.

In *Savage* v. *Jones (supra),* it appeared that the Federal law prohibited interstate shipments of food for domestic animals only if misbranded by bearing " any statement, design or device * * * false or misleading ". Indiana enacted a statute which went further; it required that there be attached to every package of the article, offered for sale in the State while in interstate commerce, a tag or label specifying the ingredients of the foodstuff. The court held the State statute constitutional and wrote (225 U. S., at p. 532): " Congress has thus limited the scope of its prohibitions. *It has not included that at which the Indiana statute aims.* Can it be said that Congress, nevertheless, has denied to the State, with respect to the feeding stuffs coming from another State and sold in the original packages, the power the State otherwise would have to prevent imposition upon the public by making a reasonable and nondiscriminatory provision for the disclosure of ingredients, and for inspection and analysis? " (Emphasis supplied.)

However, in *McDermott* v. *Wisconsin (supra),* the State act was held invalid, since, according to the court, Wisconsin pro-

hibited that which the Federal Government sanctioned. In that case, it appeared that, under the Pure Food and Drugs Act, the government permitted a product to be sold simply labeled " Corn Syrup with Cane Flavor." The State enacted a law which, proscribing any other " designation or brand on the package," required glucose mixtures to be labeled " Glucose flavored with " the flavoring material. Accordingly, the State condemned a mixture bearing the label " Karo Corn Syrup " " 10% Cane Syrup, 90% Corn Syrup," although, as indicated, it met the requirements of the Federal authorities. In ruling that the State could not require a label on articles in interstate commerce different from that which the Federal Government considered proper, the Supreme Court declared (228 U. S., at p. 133): " Conceding to the State the authority to make regulations consistent with the Federal law for the further protection of its citizens against impure and misbranded food and drugs, *we think to permit such regulation as is embodied in this statute is to permit a State to discredit and burden legitimate Federal regulations of interstate commerce,* to destroy rights arising out of the Federal statute which have accrued both to the Government and the shipper, and to impair the effect of a Federal law which has been enacted under the Constitutional power of Congress over the subject." (Emphasis supplied.)

In the *Cloverleaf Company* case (*supra*), the petitioner was engaged in manufacturing renovated butter from packing stock butter. The Federal legislation subjected the business of making such butter to inspection, regulation, and condemnation of the final product if unfit for human consumption. Though requiring inspection of the raw material — packing stock butter — the Federal statute did not provide for its condemnation or seizure. Alabama enacted a regulatory law of its own which specifically empowered one of its officials to seize and condemn packing stock butter being held for renovation. Noting a conflict in that the State condemned what the government permitted, the court held the State legislation unconstitutional and said (p. 169): " Congress hardly intended the intrusion of another authority during the very preparation of a commodity subject to the surveillance and comprehensive specifications of the Department of Agriculture. To uphold the power of the

State of Alabama to condemn the material in the factory, while it was under federal observation and while federal enforcement deemed it wholesome, *would not only hamper the administration of the federal act but would be inconsistent with its require- ments.* Whether the sanction used to enforce the regulation is condemnation of the material or the product is not significant. Since there was federal regulation of the materials and com- position of the manufactured article, there could not be similar state regulation of the same subject.'' (Emphasis supplied.)

Turning to the case at hand, it is our conclusion that the local provision is inconsistent with the requirements of the Federal law, for, as we view it, the city forbids to interstate commerce what the government has authorized. In reaching that decision, we consider the Federal law, not as it read at the trial, but as it reads today in its amended form (Civ. Prac. Act, § 344-a, subd. A, par. 5; see *Graybar Elec. Co.* v. *New Amsterdam Cas. Co.*, 292 N. Y. 246, 250), since rights and other legal relations are to be determined as of the time they are declared. As amended, the pertinent portion of the regulation provides (Code Fed. Reg., 1945 Supp., tit. 9, § 268.12, subd. [c]) : ''(c) Dog food or other animal food prepared, in whole or in part, from materials derived from cattle, sheep, swine, goats or horses, shall be distinguished from articles of human food, so as to avoid the distribution of such animal food as human food. *To accomplish this, labeling of hermetically sealed, conventional retail size containers as, for example, ' dog food ' will be con- sidered sufficient.* If not in such containers, the product must not only be properly identified, but it must be of such character or so treated (denatured or decharacterized) as to be readily distinguishable from an article of human food. Dog food shall not be represented as being a human food.'' (Emphasis supplied.)

The claim of conflict before this new regulation was promul- gated rested, essentially, on the possibility that adding coloring matter or employing another method of decharacterization demanded by the city might offend against the Federal law. With the new regulation in force, however, there is no need to speculate about potential and hypothetical conflicts. The local statute insists upon the addition of harmless coloring or other means of decharacterization. The Federal Government —

in lieu of decharacterization — permits the use of hermetically sealed containers, accompanied by appropriate labeling. Here we have a conflict, actual and open, on the very face of the two provisions.

The point is made, though, that the city has never withheld its consent to the use of hermetically sealed containers. That is immaterial. The local law does not endow the health authorities with power to permit their use. The ordinance is explicit; the product must, " by harmless coloring or otherwise ", be decharacterized. The term, though unusual and somewhat inartistic, clearly signifies some alteration of the product sufficient to change its character. Packing horseflesh in a hermetically sealed container cannot alter its character. While it may achieve the purpose for which decharacterization is required, it is not decharacterization.

Quite obviously, the ordinance does not supplement the Federal prescription; rather, it infringes upon it. Simply put, the government sanctions the use of hermetically sealed containers; the city adds a further requirement and burden. To paraphrase what was said in the *Cloverleaf* case (*supra,* p. 158) and the *McDermott* case (*supra,* p. 133), " to permit such regulation as is embodied in this statute is to permit " a city " to discredit and burden legitimate Federal regulations of interstate commerce, to destroy rights arising out of the Federal statute which have accrued both to the Government and the shipper, and to impair the effect of the Federal law."

The inconsistency affects the Quaker Oats Company directly, since it markets its dog food in sealed containers. It is of no consequence that the company was not ordered to alter its product. The ordinance is on the books and permits the enforcing agency no alternative, no discretion. It demands that the product be decharacterized, even though in hermetically sealed containers. Failure to comply with the provision calls for criminal punishment and other penalties. Regardless of the temper of the enforcing authority, regardless of its inclination, the ordinance places the product of the Quaker Oats Company, as well as its management, in jeopardy and gives rise to the essential " controversy." Under such circumstances, action for a declaratory judgment and for an injunction properly lies. (*Acorn Employment Service, Inc.,* v. *Moss,* 292 N. Y. 147, 153;

cf. *Good Humor Corp.* v. *City of New York,* 290 N. Y. 312.) As Judge LOUGHRAN declared in the *Acorn Employment* case (p. 153): "We believe the Corporation Counsel is mistaken in his assumption that such commands can be reviewed only upon a showing of actual or imminent detriment resulting therefrom. (See *Columbia System* v. *U. S.* 316 U. S. 407, 417.)"

With respect to the Hill Packing Company, however, the situation is different. The conflict noted in the other case is not here present, for the Hill Company's foodstuff is not contained in hermetically sealed containers. Both under Federal and local law, it is required to decharacterize its product. If the decharacterization features of both controls be identically administered, the Hill Company will have no cause for complaint. Insofar as consistent, both statutes may coexist; the municipal agency may enforce its local law "at least until such time as it is ousted" by the Federal authorities exercising their own paramount jurisdiction. (*Matter of Davega-City Radio* v. *Labor Board,* 281 N. Y. 13, 24.) We need not now consider at what point the local department of health would be displaced, for, as stated in the *Davega-City Radio* case (*supra*) it "is sufficient that in the present case" the Federal department "has not acted" (p. 24).

That does not, however, mean that plaintiff Hill Packing Company is not entitled to a declaratory judgment. (Cf. *Rockland Light and Power Co.* v. *City of New York,* 289 N. Y. 45.) The potentiality of conflict in administration, particularly in view of the city's insistence upon compliance with the command of the ordinance, justifies a declaration of rights. As indicated, though, such a declaration may not invalidate the ordinance in advance of its being administered in a manner inconsistent with Federal law. Accordingly, the Hill Company must follow the ordinance's demands as to decharacterization — at least until the Federal Government announces a different method of decharacterization. In the meantime, the ordinance continues operative.

The other objections urged against the ordinance lack substance. Clearly, as Special Term ruled, the ordinance is sufficiently definite and certain; it was within the legislative competence of the city to enact; it is consonant with the requirements of the due process clause (*People* v. *Blanchard,* 288

N. Y. 145; *People* v. *Arlen Service Stations,* 284 N. Y. 340; *Carolene Products Co.* v. *United States,* 323 U. S. 18; *Nat. Fertilizer Assn.* v. *Bradley,* 301 U. S. 178; *Hygrade Provision Co.* v. *Sherman,* 266 U. S. 497; *Heath & Milligan Co.* v. *Worst,* 207 U. S. 338; *Plumley* v. *Massachusetts,* 155 U. S. 461), and the equal protection of the laws clause (*People* v. *Teuscher,* 248 N. Y. 454; *Matter of City of New York [Bronx River Parkway],* 284 N. Y. 48; *Matter of Stracquadanio* v. *Department of Health,* 285 N. Y. 93); and it does not constitute an invalid delegation of legislative power. (*Yakus* v. *United States,* 321 U. S. 414; *Sunshine Anthracite Coal Co.* v. *Adkins,* 310 U. S. 381; *United States* v. *Grimaud,* 220 U. S. 506.)

Accordingly, insofar as the contention under the commerce clause is concerned, the ruling in the *Quaker Oats Company* case should be affirmed; the ruling in the *Hill* case should be reversed, and judgment directed adjudicating and declaring the rights of the parties in accordance with the views set out above.

The judgment in the *Quaker Oats* case should be affirmed, with costs. The judgments in the *Hill Packing Company* case should be reversed and judgment directed adjudicating and declaring the rights of the parties in accordance with the views expressed in this opinion, with costs in all courts.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND and THACHER, JJ., concur; DYE, J., taking no part.

Judgment accordingly.