In the Matter of KALMAN MOLNAR, Appellant, against PATRICK A. CURTIN, as Clerk of the Municipal Court of the City of New York, Respondent.

First Department, March 15, 1948.

*Victor Sussman* for appellant.

*Stanley Buchsbaum* of counsel (*Seymour B. Quel* and *William L. Messing* with him on the brief; *John P. McGrath, Corporation Counsel,* attorney), for respondent.

SHIENTAG, J. This appeal questions the validity of Local Law No. 66 of 1947 of the City of New York, the so-called Sharkey anti-eviction Law (adding § U41-7.0 to Administrative Code [enacted September 17, 1947]), and the State law validating that Local Law (L. 1948, ch. 4).

In August, 1946, petitioner purchased premises 342 East 79th Street, borough of Manhattan, New York City. He procured a certificate from the OPA Rental Area Office on November 25, 1946, permitting eviction proceedings, after a lapse of six months, for petitioner's use of the premises as his residence and as an office for his practice as a physician. Thereafter, on May 6, 1947, a summary proceeding was instituted for the dispossess of the tenant and a final order of eviction was consented to with warrant stayed until November 15, 1947. On that date the clerk of the Municipal Court refused to issue the warrant of dispossess on the ground of petitioner's noncompliance with Local Law No. 66 above referred to. Special Term denied petitioner's application for an order under article 78 of the Civil Practice Act, to compel the clerk to issue the warrant.

On this appeal petitioner contends (1) that the local law is unconstitutional (2) that the State statute purporting to validate the local law is likewise invalid and unconstitutional; (3) that both local and State laws conflict with the Federal rent control law and are, therefore, ineffective; and (4) that both the local and State laws are prospective and not retrospective in scope.

We find no merit to any of these contentions. The local law, in the face of an emergency situation and in the exercise of the police power, declares a temporary moratorium on the right

of landlords to gain possession of apartments with specified exceptions. An administrative agency is set up to determine whether a landlord seeking to regain possession of an apartment comes within one of the exceptions to this suspension of his rights. One of the most important provisions of the local law is the requirement, as a prerequisite to the institution of eviction proceedings, for a landlord to obtain a certificate from the administrative agency, under the conditions specified ·in the law and in the regulations adopted pursuant thereto.

The general power to pass such emergency rent legislation was settled after the first world war by the rent control statute then enacted by the State (*People ex rel. Durham Realty Corp.* v. *La Fetra,* 230 N. Y. 429; *Block* v. *Hirsh,* 256 U. S. 135; *Marcus Brown Co.* v. *Feldman,* 256 U. S. 170; *Levy Leasing Co.* v. *Siegel,* 258 U. S. 242; see, also, cases sustaining the constitutionality of the State emergency commercial rent laws enacted during the second world war; *Twentieth Century Associates* v. *Waldman,* 294 N. Y. 571; *Finn* v. *415 Fifth Ave. Co.,* 153 F. 2d 501 [1946], certiorari denied 328 U. S. 838; *Woods* v. *Miller Co.,* 333 U. S. 138, dealing with the present Federal emergency rent legislation). In all of these cases it was held that neither the due process nor the impairment-of-contract clauses of the Constitution invalidated legislation limiting or suspending the right of a landowner or landlord to regain possession of his property despite the termination or the absence of a lease, in the light of the emergency circumstances which necessitated the legislation. There can be no doubt that the emergency situation existing today with relation to apartment dwellings in New York City is at least as grave as that which led to the legislation sustained by the courts.

Under the New York Constitution, the Home Rule Law, and the New York City Charter, the city has the power to enact legislation to protect the safety and health of its inhabitants as long as the legislation does not conflict with State laws (N. Y. Const. art. IX, § 12; City Home Rule Law, §§ 11, 31; New York City Charter [1938], § 27; *City of Rochester* v. *Macauley-Fien Milling Co.,* 199 N. Y. 207; *Good Humor Corp.* v. *City of New York,* 290 N. Y. 312). Whatever question there may have been concerning the power of a municipality to enact the type of legislation we are considering was settled by the case of *People* v. *Lewis* (295 N. Y. 42, 50) where the court said: " There can be no doubt that such a law is·within the field of legislative power of the city as defined in the provisions of the Constitution, the City Home Rule Law and the New York City Charter unless it is inconsistent with the laws of the State."

In *Matter of Tartaglia* v. *McLaughlin* (190 Misc. 266, affd. 273 App. Div. 821), it was held that Local Law No. 66 was invalid on the ground that it exceeded the home rule powers of the City of New York in that the local law conflicted with the State law relating to summary proceedings. That case is now on appeal to the Court of Appeals. (297 N. Y. 419.) However, on February 3, 1948, a State statute validating the Local Law was enacted (L. 1948, ch. 4). Whether that statute be regarded as a delegation of power to the city or as an adoption by the State of the municipal law, Local Law No. 66 can no longer be challenged on the sole ground upon which it was declared invalid in the *Tartaglia* case, that is, that it was in conflict with the State law. The power of the State to delegate police powers to municipal corporations has consistently been upheld. The State may enact legislation which in effect constitutes an adoption of a local law even if the local law originally exceeded the powers of a municipality (*Robia Holding Corp.* v. *Walker,* 257 N. Y. 431, 436; *Lane* v. *Johnson,* 283 N. Y. 244, 254; *Bradford* v. *County of Suffolk,* 283 N. Y. 503).

The State law enacted on February 3, 1948, validated Local Law No. 66 and certain related local laws and specifically provided that " Such local laws shall be deemed effectual as of the date when such local laws purported to take effect and all acts authorized thereby are hereby legalized and confirmed." The local law is by its terms applicable to " all pending and future eviction proceedings " (Administrative Code, § U41–7.0, subd. o). It suffices for the purposes of this case to hold that a dispossess proceeding is pending at least until the warrant of eviction has been issued. Whether or not it may be deemed to be pending thereafter we do not here decide.

Finally, Local Law No. 66 validated by the enactment of chapter 4 of the Laws of 1948, is not in conflict with the Federal Housing and Rent Act of 1947. (U. S. Code, tit. 50, Appendix, §§ 1881–1902; [Public Law 129, 80th Cong., 1st Sess.].) The differences between the Federal law and the local law are not " of such a character as to render one inconsistent with the other " (*People* v. *Lewis,* 295 N. Y. 42, 50). Undoubtedly the State, and the City of New York when granted the power by the State, can under the police power adopt legislation of the kind herein involved. The question is whether the enactment of the Federal law under the war power has withdrawn this right from the State and the municipality. States and municipalities may adopt legislation dealing with the same subject as a Federal statute and designed to assist

in its enforcement (*People* v. *Lewis,* 295 N. Y. 42, *supra; Gilbert* v. *Minnesota,* 254 U. S. 325, 329; *Davies Warehouse Co.* v. *Bowles,* 321 U. S. 144, 153–155). In many respects the question of conflict is similar to that which arises in connection with the Federal powers under the commerce clause (*Hill Packing Co.* v. *City of New York,* 295 N. Y. 527, 538, affd. 331 U. S. 787).

The present Federal law makes no provision for obtaining a certificate of eviction from the Federal rent agency as a prerequisite to a proceeding for eviction under the State law. The local law now requires that such a certificate be obtained from the local rent commission. There is no doubt that the local law can be enforced without clashing with the Federal law and without in any way impairing that statute. Under these circumstances it should not be held that the mere existence of Federal legislation dealing with maximum rents and the eviction of tenants prevents the State from dealing with such matters by statutes enacted under the police power. Moreover, the history of the Federal legislation indicates that it was not intended to preclude the State and localities from legislating with reference to rent control and evictions. The 1946 amendment (Price Control Extension Act of 1946; Public Law 548, 79th Cong., 2d Sess.; 60 U. S. Stat. 664) to the Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 901 *et seq.*) extended its effective date to June 30, 1947. It added the following provision (§ 902 [60 U. S. Stat. 671]): "While maximum rents are in effect under this Act with respect to housing accommodations in any defense-rental area, such housing accommodations shall not be subject to rent control by any State or local government."

The Federal Housing and Rent Act of 1947 (U. S. Code, tit. 50, Appendix, §§ 1881–1902), however did not include this provision although it continued many other provisions of the prior law. It seems evident from this that Congress did not intend to continue its earlier prohibition against rent control by any State or local government. It indicated a realization that with the relaxation of Federal control some of the States or local governments might find it essential to apply substitute controls.

There remains one further question to be considered: whether in defining the word " pending " in relation to summary proceedings subject to the local law there is power to require a landlord, who has once secured an OPA rental area certificate, (now no longer required by the Federal statutes) and instituted dispossess proceedings pursuant thereto, to make an application to the local rent administrative agency for a certificate under

the provisions of the local law. The local regulation is necessary for local reasons. The granting of a certificate in November, 1946, by the Federal agency under the war power is no ground for the suggestion that there is not a pressing necessity, in the light of the local crisis, for obtaining a certificate from the local commission under the police power. No matter how the rights obtained under the Federal certificate may be characterized, the validity of the subsequently enacted legislation by the city and State is not impaired (*Fleming* v. *Rhodes,* 331 U. S. 100, 107).

The order of Special Term should, accordingly, be affirmed, with $20 costs and disbursements and, in view of the important questions involved, leave is granted to appeal to the Court of Appeals.

PECK, P. J., DORE, CALLAHAN and VAN VOORHIS, JJ., concur.

Order unanimously affirmed, with $20 costs and disbursements to the respondent and leave granted to the appellant to appeal to the Court of Appeals.