In the Matter of CELIA WONG, Petitioner, against MAURICE FINKELSTEIN et al., Individually and Constituting the Temporary City Housing Rent Commission of the City of New York, Respondents.

Supreme Court, Special Term, Queens County, November 10, 1948.

*Milo O. Bennett* for petitioner.

*Nathan W. Math, William L. Messing, Joseph Jay, Stanley Buchsbaum* and *Alfred Weinstein* for respondents.

CUFF, J. This is an application pursuant to article 78 of the Civil Practice Act to review the action of respondents who have refused to grant a certificate of eviction to the petitioner.

Respondents constitute the temporary city housing rent commission of the city of New York. Petitioner is the owner of a two-family house, situated in Queens County, New York City. A statutory tenant occupies part of that house contrary to petitioner's wishes, but perforce of law. In her application petitioner bases her request for a certificate solely on the ground that she desires in good faith to withdraw from the rental market the housing accommodations which her tenant occupies. In their refusal to issue a certificate, respondents indicated that they lacked the power to do so as follows: " Application is not based upon a ground for which a Certificate may be issued under the regulations." Petitioner's application is fashioned upon the Housing and Rent Act of 1948 (Public Law 464, 80th Cong., 2d Sess., ch. 161) which permits a landlord to withdraw housing accommodations from the rental market (§ 204, subd. [d]).

There is no dispute as to the facts. In order to present a pure question of law, respondents, in a letter to the court dated October 29, 1948, have stipulated that the allegations of the application filed with the commission may, for the purpose of this proceeding, be taken as true. We thus have a situation in which a property owner desires in good faith to withdraw her property from the rental market. Such action is permitted by the Federal statute, but not by the local law.

The enactment of Congress provides: " No action or proceeding to recover possession of any controlled housing accommodations with respect to which a maximum rent is in effect

under this title shall be maintainable by any landlord against any tenant \* \* \* so long as the tenant continues to pay the rent to which the landlord is entitled unless \* \* \* (5) the landlord seeks in good faith to recover possession of such housing accommodations for the immediate purpose of withdrawing such housing accommodations from the rental market, and such housing accommodations shall not thereafter be offered for rent as such \* \* \*.'' (Housing and Rent Act of 1947, § 209, subd. [a] as amd. by Housing and Rent Act of 1948, § 204, subd. [d]; U. S. Code, tit. 50, Appendix, § 1899, subd. [a].)

Section 302 of the Housing and Rent Act of 1948 further provides: '' Nothing in this Act or in the Housing and Rent Act of 1947, as amended, shall be construed to require any person to offer any housing accommodations for rent.''

New York City Local Law No. 66 of 1947 (Administrative Code, § U41–7.0) declares that except for nonpayment of rent, no tenant shall be evicted unless respondents shall certify the existence of at least one of four grounds specified in the ordinance. It is conceded that the withdrawal of housing accommodations is not one of these grounds. Institution of an eviction proceeding, without first obtaining a certificate pursuant to the local ordinance, is a misdemeanor.

A comparison of these statutes indicates that the Federal law permits withdrawal of housing accommodations from the rental market, while the city ordinance forbids it. Does this difference constitute a conflict? Under the supremacy clause of the United States Constitution (art. VI) if the local law interferes with or is contrary to a law of Congress, the Federal law is paramount and the local law must yield, even though it was enacted in the exercise of uncontroverted powers (*Gibbons* v. *Ogden,* 9 Wheat. [U. S.] 1, 211; *M'Culloch* v. *State of Maryland,* 4 Wheat. [U. S.] 405–406).

This general proposition is not disputed. In fact, respondents concede that '' If there is a conflict between Local Law 66 \* \* \* and the Housing and Rent Act \* \* \* then the latter, being the supreme law, must prevail, and the former, insofar as it is inconsistent, is unconstitutional.'' While the general principle is quite clear its application to specific facts is not always easy.

Respondents contend that there is no conflict between the local and the Federal law. They argue that the local law merely assists in enforcing the Federal law. Their position is that the Federal law does not deny to local authorities the power to

add further restrictions to those imposed by Congress, and that that is all Local Law No. 66 seeks to do. In support of their argument respondents cite *Dickson* v. *Uhlmann Grain Co.* (288 U. S. 188). In that case, the Congressional enactment made dealing in grain futures unlawful, unless the contract was made by or through the "contract market" as designated by the Secretary of Agriculture, was in writing, showing its date, the parties thereto, their addresses, the property covered, the price thereof and delivery terms. The State of Missouri passed a law prohibiting dealing in grain futures. This law was upheld by the Supreme Court on the ground that there was no inconsistency, the court saying (p. 198) that the Federal law " does not purport to validate any dealings." The *Dickson* case (*supra*) is, of course, easily distinguishable from the case at bar. In that case the Federal statute was a regulatory provision which sought to establish certain standards for trading in grain futures provided such trading was countenanced by individual States. The court said (p. 198): " The federal act declares that contracts for the future delivery of grain shall be unlawful unless the prescribed conditions are complied with. It does not provide that if these conditions have been complied with the contracts, or the transactions out of which they arose, shall be valid."

On the other hand, in *Hill* v. *Florida* (325 U. S. 538) the Supreme Court declared invalid a Florida statute requiring a business agent of a labor union to be licensed. The court held that this act circumscribed the full freedom of choice which Congress said employees should possess. The court stated (p. 541): " To the extent that § 4 limits a union's choice of such an ' agent ' or bargaining representative, it substitutes Florida's judgment for the workers' judgment."

Some norms helpful to a decision herein may be gleaned from some of the other decisions made by the Supreme Court and by our own Court of Appeals. In *People* v. *Lewis* (295 N. Y. 42) the Court of Appeals in holding that New York City Local Law No. 35 of 1945 did not conflict with the State War Emergency Act (L. 1942, ch. 445, as amd.) said (p. 51): " The local law prohibits nothing that the State law permits ". If this be a fair test of conflict, it is apparent that in the case at bar the local law conflicts with the Federal statute. It prohibits something which the Federal law permits, to wit: the right of an owner to withdraw his property from the rental market.

The Supreme Court has held that Congress will be deemed to have intended to supersede a local law when the local law

" in terms or in its practical administration, conflicts with the Act of Congress, or plainly and palpably infringes its policy." (*Southern Pacific Co.* v. *Arizona ex rel. Sullivan,* 325 U. S. 761, 766.) Our own Court of Appeals in holding that local legislation with respect to rents and evictions was a matter for concurrent action, added the proviso: " * * * at least until the field is preempted by Congress and *so long as local legislation in that field does not conflict with the letter or policy of any Federal enactment* ". (Italics supplied.) (*Matter of Tartaglia* v. *McLaughlin,* 297 N. Y. 419, 425.) Thus, the Court of Appeals follows the Federal rule that local legislation must not conflict even in *policy.* Applying this test to the instant case, again we see that the local law is invalid. It not only conflicts with the letter of the Federal statute, insofar as it omits the right to withdraw property from the rental market, but it conflicts as well with the express policy of Congress that " Nothing in this Act * * * shall be construed to require any person to offer any housing accommodations for rent " (Housing and Rent Act of 1948, § 302). This policy of Congress is not a recent innovation. While it was omitted from the act of 1947, it was originally stated in subdivision (d) of section 4 of the Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 904, subd. [d]). In the light of this analysis, we must conclude that the local ordinance, at least in policy, " does not supplement the Federal prescription; rather it infringes upon it." (*Quaker Oats Co.* v. *City of New York,* 295 N. Y. 527, 537.)

*Matter of Molnar* v. *Curtin* (273 App. Div. 322, affd. 297 N. Y. 967) is not to the contrary. It was there held that Local Law No. 66 did not conflict with the Housing and Rent Act of 1947. The act of 1947, however, did not provide for evictions for the purpose of withdrawing property from the rental market as does the act of 1948. Nor did it contain a declaration of the intent of Congress not to require anyone to remain in the rental market.

Some point is made of the fact that the 1946 amendment to the Emergency Price Control Act of 1942, prohibiting any State or local Government from legislating with respect to rent control of housing accommodations in defense rental areas, was omitted from the Housing and Rent Acts of 1947 and 1948. This does not solve the problem of conflict. While that provision was in force, there could be no conflict, because there could be no local legislation. It was only after its repeal that local governments could legislate on rent control at all. Such

local legislation as was thereafter enacted still had to meet the test that it be not in conflict with the Federal law. The *Molnar* and *Tartaglia* cases (*supra*) stand for no more. They merely held that rent controls are now subject to concurrent legislation by both the Federal and local governments. But that only brings us back to the basic principle, applicable to all concurrent legislation, that the local law must not conflict with the Federal. That principle was recognized in the *Tartaglia* case, at page 425 of 297 New York, and in the *Molnar* case, at page 325 of 273 Appellate Division.

Respondents raise the further point that the Federal Government intends gradually to decontrol evictions which may eventually be permitted in all but one or two cases. They argue that local authorities should be permitted to re-enact such restrictions as the Federal government from time to time omits and they pose the question, " Would the retention of one or two federal controls preclude the state from imposing controls on dozens of other situations? " The question misses the point. We have here something more than mere omission of a right permitted by Federal law. The particular exception which the local law omits conflicts with the express policy of Congress set forth independently in section 302 of the act. No other exception to the prohibition against evictions is so buttressed by another separate section affirmatively expressing the policy of Congress. When these sections are read together, as they must be, the conflict between Federal and local laws is quite apparent and very direct. The local law compels landlords to rent against their will, while the Federal law says they need not do so.

It has been suggested that if the right to withdraw property from the rental market is upheld, wholesale evictions will ensue. This is improper argument. In the first place, it is pure conjecture on the part of the respondents, but even assuming that respondents are correct in their surmise, it is an argument which must. be addressed to Congress, not to the court. The social and economic consequences which may flow from legislation may be considered only in interpreting a statute of doubtful meaning. Where the language is clear and unambiguous, the wisdom of the law is not within the province of the court. Nor may local authorities assume to nullify an act of Congress because they disagree with its policy or its possible effects.

If it be thought that the Federal statute will be utilized as a subterfuge, we need only refer to the language of the law

which says that the application must be made " in good faith ". Presumably, suitable penalties may be enacted to restrain those who would use this section for fraudulent purposes (cf. Civ. Prac. Act, § 1444-a).

The decision of Mr. Justice POWERS in *Matter of Recknagel* v. *Finkelstein* (193 Misc. 31) and of Mr. Justice LIVINGSTON in *Matter of Batterman* v. *Finkelstein* (193 Misc. 236) have been considered by this court although we have reached a different conclusion. The decision of the United States Court of Appeals for the Third Circuit, in *Woods* v. *Durr* (170 F. 2d 976, decided Nov. 8, 1948) has also been called to the attention of this court. The right to evict in order to withdraw property from the rental market was there upheld, but, in that case, the Federal statute alone was under consideration. There was no question of conflict with any local law.

After careful consideration, the court is of the opinion that the clear intent and plain direction of Congress that property may be withdrawn from the rental market, may not be nullified by the local authorities. The act of Congress (Housing and Rent Act of 1948) is the law of the land and must be recognized by respondents. The application is granted.

Settle final order on notice.