Keating, J.
(concurring). While I concur with the views expressed by Judge Van Voobhis, I desire to point up some of the practical considerations which, to my mind, are of major significance.
As an academic exercise, it may be pleasant to ponder whether courts make new law or merely discover the law as it has always been, theretofore hidden away somewhere in all its power and glory. Upon the outcome, so goes jurisprudential thought, we will then determine whether to apply a rule retroactively (actually a misnomer, since it will then be considered as always having been the law) or whether to apply it prospectively only, or indeed, as in the case now before us, whether to apply it retroactively but only to the extent that cases are still in the ordinary appellate process.
Johnson v. New Jersey (384 U. S. 719) however, as well as the daily business of this court, provides a complete answer to *349 the query on a practical level. The constitutional mandates of Miranda v. Arizona (384 U. S. 436) are of benefit only to those defendants whose trial commenced on or after June 13, 1966. Voluntary confessions are admissible after June 13, 1966 only if the defendant was informed of his right to remain silent, told that anything he said could be used against him, informed of his right to counsel and, if indigent, informed of his right to have counsel assigned (Miranda v. Arizona, 384 U. S. 436, 467, 469, 471, 473). Defendants tried prior to that date are governed by the principles set forth in such cases as Escobedo v. Illinois (378 U. S. 478) and People v. Gunner (15 N Y 2d 226).
I do not think it can be gainsaid that even a cursory examination of the Supreme Court opinions and the opinions of the New York Court of Appeals over the past 20 years witness tremendous strides in the fair and impartial administration of the criminal law. No doubt this growth will continue as indeed it must if we are to remain a vital and maturing society. But if every changing advance in the law means that we must wash away the past and undo all that has .already been done, I am afraid that this progress which is so desirable will be seriously hampered, often with no correllative gain to be shown for the effort.
I agree with Chief Judge Desmond that “ There is nothing in Johnson mandating our refusal of today to apply Miranda to a newly argued appeal like this one ” (pp. 353-354). But equally, there is nothing in Johnson which mandates the opposite result — that we do apply the law retroactively. Quite explicitly, the Supreme Court left the question of retroactive application open for individual consideration by the State courts (Johnson v. New Jersey, supra, p. 733). It thus behooves us to determine what may be gained and what may be lost by applying Miranda to cases still in the ordinary appellate process.
If we apply Miranda retroactively we adhere to what we called in People v. Loria (10 N Y 2d 368, 370) “ the general rule that we give effect to the law as it exists at the time of our decision ”. I confess that I am unable to read the cases cited in Loria as supporting so far-reaching a proposition. Matter of Tartaglia v. McLaughlin (297 N. Y. 419), Knapp v. Fasbender (1 N Y 2d 212) and Quaker Oats Co. v. City of New York (295 N. Y. 527) all involve statutes enacted between the trial and the appeal *350 where the legislative intent to apply them retroactively was either explicit or was clearly inferable (cf. McMaster v. Gould, 240 N. Y. 379; Matter of Decker v. Pouvailsmith Corp., 252 N. Y. 1; Robinson v. Robins Pry Dock & Repair Co., 238 N. Y. 271).
Bnt be that as it may, the truth, as 1 see it, is that when the chips are down and when a significant number of persons or a significant public policy is involved, broad statements of a general rule do not and should not- preclude us from giving the specific question closer examination. We were presented with just such a problem in Rosenstiel v. Rosenstiel (16 N Y 2d 64) wherein this court upheld the validity of bilaterally obtained divorce decrees in Chihuahua, Mexico. Had we held such divorces invalid, we would have been faced with the question of retroactivity. Chief Judge DesmoNd thus said in a separate opinion (16 N Y 2d, p. 78): “I vote for a declaration that such divorces are void, but I am not bound to and do not vote to give this ruling any more than prospective effect. I cannot shut my eyes to the realities. Tens of thousands of such purported divorces have been granted to New Yorkers who acted on advice of attorneys who relied on 25 years of decisions by the New York lower courts * * * This court has a clear right to give our ruling prospective effect only (see Lyon v. Richmond, 2 Johns. Ch. 51; Harris v. Jex, 55 N. Y. 421; Great Northern Ry. v. Sunburst Co., 287 U. S. 358; Linkletter v. Walker, 33 U. S. L. W. 4576) and justice and fairness dictate that we should do so
In the end then, we are faced with assessing independent policy considerations which do not lend themselves to the declaration of a “ general rule.”
We are asked to examine the justice of applying one rule to the appellants considered by the Supreme Court in Miranda while we apply another to this case as well as similar cases involving the identical point (People v. Hocking, 18 N Y 2d 832; People v. Teams, 18 N Y 2d 835; People v. Kulis, 18 N Y 2d 318). Michael Vignera, whose appeal was considered along with Miranda, is to have a new trial. The present appellant, McQueen, will not have a new trial. Yignera was lucky. McQueen is not. This is a wholly different thing from talking about justice. Upon a new trial it may be that the People will be unable to establish Yignera’s guilt without the use of his *351 confession. Bnt I would not want to suggest where the justice is and where it is not.
If it is unjust to deprive the appellant, McQueen, of Miranda’s benefits, it is at least equally unjust to deny them to those whose cases have already completed the appellate process. Yet no one has urged that we give the rule complete retroactivity. Any line drawn is essentially arbitrary. Better that we draw it with the fundamental function of criminal trials in mind-determining guilt or innocence — than that we bind ourselves to the slavery of unyielding rules.
While we speak of the justice of the proposition, we must keep in mind yet another factor. Until the Supreme Court handed down the opinion in Miranda, justice did not require that a defendant be given the four warnings already recited (People v. Gunner, 15 N Y 2d 226, supra). It was sufficient that a confession was made voluntarily and that a defendant had not affirmatively been denied access to counsel (People v. Donovan, 13 N Y 2d 148).
Involuntary confessions are consistently excluded in this State and all those who are denied Miranda’s benefits are free to test the voluntariness of their confessions within the limits outlined in People v. Huntley (15 N Y 2d 72). At such a hearing, a defendant is clearly entitled to show that he was not told of his privilege against self incrimination or his right to an attorney. Each will bear on voluntariness. But there is no purpose in automatically directing a new trial because a defendant was not told of these rights when, at the time, there was no requirement that he be told and, indeed, there existed a specific holding to the contrary (People v. Gunner, 15 N Y 2d 226, 233, supra). The District Attorney, in presenting his case, has some right to rely on the latest pronouncements of a State’s highest court.
At the oral argument held to consider this question of retro-activity, it appeared that in New York and Bronx Counties combined some 50 homicide convictions and approximately 100 felony nonhomicide convictions would be reversed if Miranda was applied retroactively. The total number of convictions affected in about one third of the counties of the State, exclusive of New York County, was given to us as 221. Retrials of those who could be retried in New York County would, it is asserted, occupy the trial courts of New York County for a full year.
*352 The time is not significant. "What is significant is that many of those defendants convicted of heinous crimes would he set free to walk the streets because their confessions would be excluded, although there was not a question at all about their guilt or about the veracity and reliability of their confessions. No good reason has been suggested for reaching such an anomalous result and, as I see it, every significant policy consideration leads to the opposite conclusion. That is undoubtedly the reason why the Supreme Court in Johnson employed the unusual language it did in suggesting a specific cut-off date.
I, therefore, concur in the affirmance of the judgment appealed from.