GOOD HUMOR CORPORATION et al., Respondents, *v.* CITY OF NEW YORK et al., Appellants.

Argued March 1, 1943; decided April 15, 1943.

*Thomas D. Thacher, Corporation Counsel (Paxton Blair, Francis J. Bloustein* and *Raymond J. Horowitz* of counsel), for appellants.

George A. Spohr, Jr., Jeremiah T. Mahoney, Warren C. Fielding, Pasquale E. Conforti, Peter T. Kourides, Charles S. Liss, Leon J. Elterman and Irving A. Cook for respondents.

LEHMAN, Ch. J.  The plaintiff Good Humor Corporation is engaged in the business of manufacturing and selling at retail ice cream and '' ice cream products.''  Its employees make such sales to consumers in the streets of the city from refrigerated motor cars, tricycles and hand carts.  Peddling of merchandise in the streets of the city of New York has long been regulated by statutes and ordinances.  With exceptions hereafter noted, the employees of the plaintiff selling its products on the streets of the city of New York obtained licenses in accordance with the provisions of the Administrative Code of the City of New York relating to the regulation and licensing of peddlers.  In December 1941 the city of New York adopted or attempted to adopt a Local Law entitled '' A local law to amend the administrative code of the city of New York, in relation to the prohibition of itinerant peddling on the streets of the city.''

The Local Law provides: '' Section 1. The administrative code of the city of New York is hereby amended by adding thereto a new section, to follow section 435-13.0, to read as follows: Section 435-14.0. Itinerant peddling prohibited. a. It shall be unlawful for any person to peddle, hawk, vend or sell any goods, wares or merchandise on any of the streets of the city. b. The provisions of this section shall not apply to: 1. Any person who operates and maintains a pushcart or other vehicle under an open air market license issued by the commissioner of public markets pursuant to the agriculture and markets law; or to — 2. Any war veteran or any widow of a war veteran who peddles under a license issued pursuant to section thirty-two of the general business law; or to — 3. Any adult blind person who operates under a license issued pursuant to section ten of the general city law or by the commissioner of markets pursuant to section B36-89.0 of the code; or to — 4. Any person who sells newspapers and periodicals; or to — 5. Any person who owns

and operates a farm in the city and who sells produce grown on such farm in the streets of the city; 6. Any person who violates this section, upon conviction thereof, shall be fined not more than ten dollars or imprisoned for not more than ten days, or both. § 2. This local law shall take effect immediately.''

Challenging the validity of the Local Law, the Good Humor Corporation has brought an action to enjoin enforcement of the Local Law. Other parties who are prohibited by the statute from continuing to carry on their business of selling merchandise in the streets of the city have been joined as plaintiffs but have filed no separate complaints. In its complaint Good Humor Corporation alleges: '' That said Local Law of the City of New York is illegal and void in that (1) the defendant, the city of New York, lacks the power and authority to enact such a law; (2) in that the same is not a proper or valid exercise of the police power of the City of New York and is unreasonable and discriminatory; (3) in that the same is unconstitutional, being in contravention of the Fourteenth Amendment of the Constitution of the United States and article 1, sections 1, 6 and 11 of the Constitution of the State of New York; and (4) in that the same is arbitrarily oppressive, class legislation and in derogation of the due process and equal protection clauses of both the Constitutions of the United States and the State of New York.''

In the City Home Rule Law the Legislature has conferred upon the local legislative body of each city, power to adopt and amend local laws in relation to matters therein enumerated including the '' acquisition, care, management and use of its streets.'' (§ 11, subd. 1, as amd. by L. 1939, ch. 867.) In section 27 of the New York City Charter the Legislature has conferred upon the city council '' power to adopt local laws as to it may seem meet, applicable throughout the whole city or only to specified portions thereof, which are not inconsistent with the provisions of this charter, or with the constitution or laws of the United States or of this state, for the good rule and government of the city; for the order, protection and government of persons and property; for the preservation of the public health, comfort, peace and prosperity of the city and its inhabitants; and to effectuate the purposes and provisions of this charter or of the other laws relating to the city.'' Under these statutes the

city has broad power to regulate the use of the city streets and to provide by local law for the good government of the city and the preservation and promotion of the health, safety and general welfare of its inhabitants. Local laws are valid which have a substantial relation to matters within the field where legislative power is vested in the local legislative body of the city by the Constitution and statutes of New York. They must be reasonably calculated to achieve a legitimate public purpose.

The Committee on General Welfare of the Council of the city stated in its report to the Council before the challenged local law was adopted that: " The object of this bill is to prevent unfair competition by itinerant peddlers with storekeepers who pay rent and various taxes, and it is in the interest of the prosperity of the city and its inhabitants. It also has the approval of the Commissioner of Markets. Your committee therefore recommends its adoption." Peddling merchandise upon streets and highways is a lawful vocation recognized and regulated by general statutes adopted from time to time by the Legislature. Though streets and highways are intended primarily for the use of pedestrians and vehicles travelling upon them, the vending of merchandise by persons who have no fixed place of business and who carry their merchandise in vehicles or on their persons and who seek customers from those passing along the streets is a common and traditional use of the streets. The right to use a street by any person even for travelling " must be exercised in a mode consistent with the equal rights of others to use the highway." (*People* v. *Rosenheimer,* 209 N. Y. 115, 120.) Any use of the streets, and certainly any use of the streets for a private business purpose, which interferes unduly with the use of the streets by others for travel, may doubtless be prohibited, in proper case, by the Legislature. We need not now pause to define the exact limits of the legislative power of a city to adopt local laws " in relation to the    *   *   *    care, management and use of its streets." Certainly that power is not broad enough to prohibit use of the street for a lawful business, recognized by statute, for the sole purpose of protecting rent payers and taxpayers against competition from others who do not pay rent or taxes. The object of the Local Law as declared in the report of the Committee on General Welfare is not an object which a city has constitutional power to make effective.

(*People* v. *Kuc*, 272 N. Y. 72; *People* v. *Cohen*, 272 N. Y. 319.) That would not necessarily render the Local Law invalid if the local legislative body had other or additional purposes which it had constitutional power to make effective. The statement of the purpose of the Local Law in the committee report is not conclusive. The question here presented is whether the Local Law is reasonably calculated to promote such " other or additional purposes." (*Stephenson* v. *Binford*, 287 U. S. 251, 276.)

We assume that even " the harmless pursuit of a lawful private business " on the public streets of New York may be interdicted by the legislative body in order to put an end to " an undesirable invasion of, or interference with, the full and free use of the highways by the people in fulfillment of the public use to which streets are dedicated." (*Valentine* v. *Chrestensen,* 316 U. S. 52, 54.) In their answer the defendants have pleaded that the Local Law was adopted to remedy harmful conditions which, they allege, are the results of peddling in the streets of New York. At the trial they offered evidence intended to sustain these allegations. The inference might reasonably be drawn from such evidence that *some* " itinerant peddlers " are unclean in their habits and are " irresponsible, insolent, unfair and abusive in the manner in which they conduct their business; that at times *some* fraudulently use defective scales and measures; that *some* keep and store their merchandise and offer it for sale in unsanitary manner; and that in *some* crowded streets and especially at approaches to bridges peddlers and peddlers' carts impede traffic. Doubtless the Legislature might adopt reasonable measures to prevent abuses in connection with licensed peddling; we may assume that the Legislature might even authorize a city by local law to refuse to license any peddlers and to stop all peddling if complete prohibition rather than regulation of peddling is a reasonable measure to stop abuses. It would none the less be a drastic method of ending abuses; — a method that may be used only where the abuses are general and difficult to control by regulation and where they cause or threaten injury to the public so serious that the Legislature might reasonably find it outweighs the harm that would be caused to some by complete prohibition. (*Adams* v. *Tanner*, 244 U. S. 590; *Tolliver* v. *Blizzard*, 143 Ky. 773.) The fundamental question remains whether prohibition rather than regulation in this case is reasonable.

The plaintiff Good Humor Corporation has made a large capital investment in its business. Its employees are examined by a physician before they are hired. They put on fresh white uniforms every day and are taught to be courteous in their dealings with the public. The company employs a chemist to insure the purity of its products. It enjoys a reputation for honesty and it has never cheated customers on weight or content of containers. Its vehicles do not enter congested areas. The city expressly concedes in its brief that these facts are established by the evidence. It thus clearly appears that the business of selling merchandise in the streets of the city can be conducted without creating any of the evils which we are told the local law is intended to prevent. Such evils arise only when those who carry on such a business resort to evil practices. All such evils can be avoided by voluntary regulation of the business or by compulsory regulation in accordance with a reasonable statute or ordinance enforced by the police with the cooperation of judicial officers. A business conducted in the manner in which the plaintiff conducts its business promotes the public convenience without causing any injury to the public. An ordinance which prohibits a business so conducted because others conduct a similar business in manner which creates conditions which the public should not be compelled to tolerate, is patently unreasonable, at least where it does not appear that discrimination between the harmful and the harmless is impractical and that the public interest may be served better by complete prohibition than by further attempts at regulation.

We are told that experience has demonstrated to the city authorities that attempts to regulate are futile. It is said that ordinances which have prohibited peddling in specified areas of the city have been declared by the courts unconstitutional. We have, it is true, said that the city cannot by ordinance prohibit peddling in certain sections of the city when conditions in the restricted section " are not dissimilar from those existing in many other areas " and where the ordinance " bears no relation to the welfare of the public but is designed for the convenience and interest of a special class." (*People* v. *Cohen*, 272 N. Y. 319, 322; *People* v. *Klinge*, 276 N. Y. 292.) We have not indicated, however, that an ordinance which would prohibit peddling in restricted areas and streets in order to prevent

interference with traffic would be invalid where discrimination is based on traffic conditions. (See *Bus Depot Holding Corp.* v. *Valentine,* 288 N. Y. 115, at pp. 121, 122.) We are told that regulation by licensing peddlers is ineffective because many peddlers sell merchandise illicitly without licenses and that the Magistrates Courts do not put a stop to such unlawful practices by inflicting adequate punishment on wrongdoers. Even Good Humor Corporation, it is said, " has not always been careful to see to it that all its agents selling ice cream on the streets are licensed." So far as appears in this record, the only failure of the Good Humor Corporation to see that all its agents were licensed was occasioned by a dispute whether the place where some agents sold ice cream was in fact a public street. That, however, is unimportant. The important facts conclusively shown on this record are that the business of peddling is lawful when conducted in manner which does not injure or annoy the public or impede traffic upon the street; that peddling can be so conducted and is so conducted by the plaintiff; that the evils which we are told the ordinance prohibiting all peddling in the streets — however conducted — is intended to remedy — are due to indecent, unsanitary or unlawful practices of some peddlers; and finally that these practices can be stopped by statutes, ordinances or sanitary regulations aptly formulated and rigidly enforced. The argument that the city has not sufficient enforcement officers and that the courts deal too leniently with offenders is not persuasive.

The Local Law, it seems evident, has no reasonable relation to the public health and is not intended to protect articles of food from contamination through the dust and dirt of the streets for it is not confined to articles of food and even specifically excepts farm products sold by the farmers. It has no reasonable relation to peddling on the streets of New York without a license. That has long been a penal offense and the Local Law does not purport to change the offense, but it would relieve the offenders of competition by licensed peddlers carrying on their work in lawful manner. There is no reason to believe that the offenders would, in such circumstances, voluntarily abandon their illicit practices or that punishment would be more certain or effective. A requirement that every peddler must prominently display his license would permit easy identification of

those peddlers who carry on their trade illicitly. Indeed, it is not asserted that even now the police have difficulty in arresting peddlers who are not licensed. The asserted difficulty is that after arrest they receive no adequate punishment. Lax enforcement of regulatory laws affords scant justification for completely prohibitory laws. Contumacious disregard of the law and abuse of legal rights by some will justify curtailment of the legal rights of those who do not abuse them only where there is reasonable ground for a legislative finding that discrimination between the useful and the harmful is impractical. That does not appear in this case.

The judgment should be affirmed with costs.

FINCH, J. (dissenting). When the local legislative body of the city of New York has adopted unanimously a Local Law, which has been approved by the Mayor of the city and the Board of Estimate, regulating itinerant peddlers so that they may only operate pushcarts or other vehicles in open air markets, may the Court of Appeals declare that the legislation is not a reasonable regulation of a purely local problem and that, therefore, the same is unconstitutional?

The effect of the legislation enacted to meet this problem is not to force the vendors of fruits, vegetables and ice cream to abandon their trade. Rather the Local Law simply compels these vendors to change the manner in which they have pursued their calling, by requiring them to confine themselves to the public markets where adequate facilities have been provided.

The city of New York and the Police Commissioner have appealed on constitutional grounds from an order of the Appellate Division affirming a judgment declaring unconstitutional Local Law No. 111 of 1941 as an improper exercise of the police power and as going beyond the powers of the city under the New York City Charter (1938) and the City Home Rule Law, and enjoining its enforcement. The Local Law in question makes itinerant peddling unlawful except when operated under an open air market license. The Act shall also not apply to the following classes of persons who are permitted to peddle under State laws, namely, any war veteran or widow of a war veteran, who peddles under license issued under section 32 of the General Business Law, or any adult blind person who operates under a license

issued pursuant to the General City Law. In addition, the Local Law does not apply to any person who sells newspapers or periodicals, or who owns and operates a farm in the city and sells produce grown on the farm in the streets of the city.

In answer to a growing demand that the cities of the State should have a larger measure of home rule over local affairs and be freed from the effects of mandatory state legislation, enacted at the demand of special interests and against the interests of the inhabitants as a whole, the electors of the State adopted at the general election on November 6, 1923, an amendment to the State Constitution providing for home rule for cities. This same article was renumbered and transferred as amended, to the Constitution adopted by the Constitutional Convention of 1938 and approved by a vote of the people in the election of that year. At the following session of the Legislature this home rule provision of the Constitution was reimplemented so that the local legislative body of a city was given power to adopt and amend Local Laws in relation to the property, affairs and government of the city, and specifically for " the acquisition, care, management and use of its streets and property  *  *  *," (L. 1939, ch. 867.) As part of this chapter, known as the " City Home Rule Law", it was specifically provided (article 3, § 30): " Legislative Intent. It is the intention of the legislature by this chapter  *  *  *  to enable cities to adopt and amend local laws for the purpose of fully and completely exercising the powers granted to cities by the terms and spirit of such article.  *  *  *  nor to restrict the powers of the legislature to pass laws regulating matters of state concern as distinguished from matters relating to the property, affairs or government of cities."

In brief, therefore, the city was permitted to legislate with reference to matters of local concern, while to the State Legislature was left matters of State concern. Specifically, also, the acquisition, care, management and use of the streets of the city were named as a matter of local concern.

For years itinerant peddlers have occasioned a pressing municipal problem. There is the problem of the health of the inhabitant of the city, arising from the contamination of food sold from pushcarts, by the dust and dirt of the streets. Then there is the problem of proper supervision, not only as to the

safeguarding of food but as to short weighting and other like problems. These problems have been greatly increased by reason of the many itinerant peddlers who have not only persistently refused to procure licenses but have also evaded sanitary and traffic regulations. These unlicensed peddlers have wholly evaded supervision. In connection with proper supervision, this record shows that during the year 1941 the total number of arrests and summonses for peddling without a license was 24,575. Also, some of these peddlers have been arrested as often as three times a day, and as soon as released on a couple of dollars bail, or arraigned and sentence suspended, are immediately back at the old stand. Other examples showing difficulty of enforcement are cases of one peddler who was arrested eighty-eight times, and of another who was arrested seventy-six times in the year 1941. Even without the express words of the City Home Rule Law, confiding to the municipality the care, management and. use of the streets, the problem is a local one. The policy with reference to the use of the streets as places from which to transact business, is thus clearly for the local legislature of the city to determine. The city of New York might wish to deal with the problem in one way while the city of Buffalo or Syracuse might adopt a different policy.

The policy adopted by the city of New York does not involve destruction of the business of these vendors, but regulation through confinement to open air market places where supervision will be possible and practicable. The availability of cheap means of transportation to any of these open air markets renders them readily accessible to the public. All regulation, of course, involves a certain amount of prohibition. As was said in *Kentucky Whip & Collar Co.* v. *Illinois Central R. R. Co.* (299 U. S. 334, 347), " Congress can certainly regulate interstate commerce to the extent of forbidding and punishing the use of such commerce * * * " when necessary to protect the people of the states. Granted the existence of the power to regulate, whether the prohibition imposed be narrow or sweeping, temporary or permanent, raises only the question whether the challenged legislation is reasonably adapted to achieving the desired result.

In view of the direct relationship between the health of the inhabitants of the city and the protection of the articles of food

and other articles from contamination through dust and dirt of the streets, together with the impossibility of any reasonable supervision by the city of these itinerant peddlers, and the opportunity under present provisions for the influx into the city of the great army of unlicensed peddlers, together with the problems of traffic and the freeing of the streets from private sales, we cannot say that there is no reasonable basis for the enactment of this Local Law.

This Local Law is further attacked upon the ground of the exceptions contained therein. Such legislative distinctions are presumed to be founded upon a valid basis in the absence of proof to the contrary. The exceptions in favor of veterans and the blind are provided for by State law. (General Business Law, § 32; General City Law, § 10.) Hence, as to these two classes of persons there has been declared a State policy. The exception relating to the vending of newspapers and periodicals is obviously founded upon a distinction in the nature of this business, it involving no menace to health and no hindrance to traffic. Likewise, the exception in favor of the farmer in the city who sells produce grown on his farm presents no danger for lack of proper supervision. All these exceptions rest upon a reasonable classification.

It follows that the judgment appealed from should be reversed and the complaint dismissed with costs.

LOUGHRAN, RIPPEY and DESMOND, JJ., concur with LEHMAN, Ch. J., FINCH, J., dissents in opinion in which LEWIS and CONWAY, JJ., concur.

Judgment affirmed.