TRIO DISTRIBUTOR CORPORATION et al., Respondents, *v.* CITY OF ALBANY et al., Appellants.

Third Department, September 24, 1956.

*Harold E. Koreman, Corporation Counsel,* for appellants.

*Charles B. Sullivan* and *J. Joseph Murphy* for respondents.

*Per Curiam.* The question presented by this appeal is the constitutionality of an ordinance enacted by the Common Council of defendant, the City of Albany, which reads as follows:

" Section 1. The Common Council hereby finds and declares, as a matter of legislative determination, that it is in the best interests of the public and for the welfare and safety of the young children in the City of Albany that those peddlers from vehicles of products attractive to and popular with children and inviting or causing children to gather and collect about such vehicles in the carriageways of the public streets and public places, should be required to protect and safeguard such children from being struck by motor vehicles lawfully in the public streets and public places. This ordinance is declared to be a measure designed to protect and safeguard, in the public interest, the young children in the City of Albany and to regulate traffic, to prevent congestion of traffic, and to protect and preserve the safety, health and welfare of inhabitants of the City.

" § 2. When any person shall vend or peddle from a vehicle in the public streets and places in the City of Albany, and, in the pursuit of such business or activity, children shall collect, assemble or gather about such vehicle for the purpose of making purchases, such person so vending and peddling, and, the pursuit of such occupation, shall be accompanied by an attendant whose sole duty and occupation shall be to protect and safeguard the children from injury and the hazards of street vehicle

traffic and he shall maintain a constant look-out for approaching vehicles and shall warn the children and guard them from injury.

" § 3. Any person violating the provisions of this ordinance shall, upon conviction, be punished by a fine of not to exceed $100.00 or imprisoned for not to exceed ten days or by both such fine and imprisonment."

Plaintiffs challenge the validity of this ordinance and have brought this action to restrain its enforcement. After a trial, judgment was granted in favor of plaintiffs declaring the ordinance unconstitutional and void and restraining its enforcement. Plaintiff, Trio Distributor Corporation, is a domestic corporation which was organized in March of 1954 to distribute ice cream products manufactured by Good Humor Corporation in Albany, Schenectady, Troy, Saratoga, Gloversville, Delmar, and other nearby communities.

In the city of Albany, plaintiff corporation operates four trucks each of which is equipped with one seat and a refrigerated body from which the " Good Humor " articles are dispensed to the customers while the truck is parked at curbings. The average gross income per day from each truck is approximately $75. One of the drivers dispenses about 20% of his products to adults located in commercial establishments. Other drivers also service such establishments. During a season, which runs from April to October, it is estimated that plaintiff corporation sells 500,000 of " Good Humor " products from its trucks operating in the city of Albany. The corporate plaintiff's Albany trucks have experienced one accident involving personal injuries since the inception of its business. Each driver is instructed to observe safety precautions while driving and also while dispensing ice cream articles to children.

The only other known distributor or vendor affected by the ordinance is Capital District Distributors, Inc., which operates two trucks in Albany which vend ice cream products under the trade name of " Skippy ". Each truck sells to approximately 700 persons each day of whom 500 are children. During the four years of its operations in the city of Albany, Capital District Distributors, Inc. has had one personal injury accident involving a child.

Before adopting the ordinance, the Common Council appointed a committee of one alderman " to investigate and report on the hazards to children who are attracted into the public streets by itinerant mobile vendors of products which are especially popular with children ". The alderman reported that children stood in the street while being served with ice cream products

from refrigerated trucks, that other children ran from the sides of the street to the trucks and that traffic continued to move on the street.

He further reported that the driver-salesmen are unable to sell and deliver their products, make change and at the same time take adequate measures to protect and safeguard the children from being run down by other vehicles using the streets.

Section 30 of the Second Class Cities Law provides as follows: '' The legislative power of the city is vested in the common council thereof, and it has authority to enact ordinances, not inconsistent with law, for the government of the city and the management of its business, for the preservation of good order, peace and health, for the safety and welfare of its inhabitants and the protection and security of their property; and its authority, except as otherwise provided in this chapter, or by law, is legislative only.''

An ordinance adopted pursuant to a general grant of legislative authority such as contained in section 30 must not be unreasonable, discriminatory nor oppressive. (*Good Humor Corp.* v. *City of New York,* 290 N. Y. 312; *People* v. *Arlen Service Stations,* 284 N. Y. 340; *People* v. *Klinge,* 276 N. Y. 292; *People* v. *Kuc,* 272 N. Y. 72; 62 C. J. S., Municipal Corporations, § 203.)

It is beyond the power of government to arbitrarily interfere with private business or to impose unnecessary or unreasonable restrictions on such business under the guise of promoting the general welfare. (*Cowan* v. *City of Buffalo,* 247 App. Div. 591.) The fundamental question in this case is whether the disputed ordinance is a reasonable exercise of the power the municipality has been granted to preserve the safety and welfare of its inhabitants.

Section 30 of the Second Class Cities Law seems broad enough to empower the city to enact an ordinance of the character in question, providing, of course, that the enactment is reasonably calculated to promote the safety of the public or any substantial portion thereof (*City of Buffalo* v. *Stevenson,* 207 N. Y. 258; *Stephenson* v. *Binford,* 287 U. S. 251; *People* v. *George,* 280 N. Y. 843, affg. 170 Misc. 707).

Whether an ordinance is reasonable or not frequently poses a problem as difficult to determine as it is to define substantial evidence. But it must be said that courts are not authorized to exercise a general veto power over legislation, whether the same is enacted by a city council or a general legislative body, and hence may not legitimately void a local law merely because they do not like it or regard it in part as impracticable. **For**

this, among other reasons, a presumption of validity attaches to every legislative act. Indeed, under our system legislative bodies are entitled to experiment with regulations designed for the protection of the public; they may even enact what many people may regard as foolish laws; and at least they are not required to adopt the counsel of perfection as that may be envisaged by some other branch of the government.

If it is reasonable on one hand to say that a clear price sign must go on a gasoline station unencumbered by competing signs (*People* v. *Arlen Service Station,* 284 N. Y. 340, *supra*); to say that people who buy milk from producers must, unlike other purchasers of other commodities, post a bond that the bill will be paid (*People* v. *Perretta,* 253 N. Y. 305); and to say that no auction of jewelry shall be conducted at night (*Biddles, Inc.,* v. *Enright,* 239 N. Y. 354), it seems reasonable also to restrict the ice cream business by saying that special protection shall be given to children by dealers who sell ice cream products in vehicles on city streets.

The purpose of the ordinance under attack seems a legitimate one so far as the record discloses. In this respect it differs from the chief case cited against it (*Good Humor Corp.* v. *City of New York,* 290 N. Y. 312, *supra*). There the avowed sole purpose was to protect the rent payers and taxpayers against competition from others who did not pay rent or taxes.

The principal arguments against the constitutionality of the ordinance here appear to involve matters of judgment concerning which reasonable minds might differ. There is the viewpoint that plaintiff had taken affirmative measures of protection of a reasonable nature before the enactment of the ordinance. But there is a counter viewpoint to the effect that a single attendant who is occupied handing out his product and making change is not in a very good position to watch children who may come from across the street. As to warning signs it is a matter of common knowledge that such signs mean little to children of tender years.

Again it is said that the accident record is so minute in view of the number of sales that the requirement for an additional employee on a truck is oppressive. The other viewpoint is that the city is not required to wait until the horse is stolen before it locks the door of the barn. Certainly vehicular traffic has increased enormously in the last few years and is still increasing. It hardly seems necessary to add that the safety of even one or two children is a matter of paramount importance and should outweigh economic considerations. The latter can be taken care of by raising the price of the product.

Finally it is said that the ordinance is unreasonable because it does not expressly confer upon the proposed additional attendant any police power. Even though the proposed attendant does not possess the power of arrest, nevertheless his presence and his acts might well be viewed as affording some additional protection for the safety of children against the hazards of vehicular traffic.

The court at Trial Term did not find the ordinance unreasonable; and, indeed, the danger sought to be corrected is recognized by the plaintiff itself. On the back of each of its trucks are signs reading " Drive Slowly. Children Crossing." On the dashboard of each truck is a warning sign to the operator-salesman. It says: " Warning. Under no condition serve children unless they are on the sidewalk." All wrappers of the products sold by the plaintiff contain safety slogans. One of them reads: " Watch out. Automobiles come both ways."

These afford recognition of the public danger involved in this private business with which the local legislative body undertook to deal. The " warning " to salesmen not to serve children unless they are on the sidewalk suggests the danger of the tendency of children to crowd around the vehicle to be served in the street; and the notice to other motorists that they should drive slowly, " children crossing ", is more pointedly suggestive of the potential danger.

The legislative body need not take the " warning " sign in the plaintiff's vehicles as conclusive evidence that the danger warned against will be met; or even that the salesman-driver will be able to meet it. Warning signs are posted in many places where watchers or guards are also commonly thought to be needed.

The Trial Term invalidated the statute on the ground of vagueness. The duties of an adult guard to watch children buying ice cream on a public street need not be specified in minute detail to make the regulation valid in respect of adequate standards. No one could misunderstand what was meant to be done by the guard any more than what would be done by a guard at a railroad crossing or at a dangerous stairway or excavation. Common sense would be used by an adult to protect children. This is not the regulation of traffic; it is a shield against the heedlessness of childhood.

Nor does this case present the question that might arise if a guard himself charged with violation of the ordinance asserted that he could not obey the ordinance because its " standards " were so indefinite he did not know what to do to obey it. This case presents, rather, the assertion by the employer that no guard is necessary and that to require one is unreasonable.

There is no allegation or proof in this case that the regulation amounted to a prohibition of the plaintiff's business. There is a sharp distinction between those local legislative acts which amount to a proscription of business and those which permit the business but impose conditions regarded by the local legislature as being required in the public interest. Decisions such as *Good Humor Corp.* v. *City of New York* (290 N. Y. 312, *supra*); *People* v. *Klinge* (276 N. Y. 292, *supra*); and *People* v. *Kuc* (272 N. Y. 72, *supra*) deal with absolute prohibitions of business in the streets. Emphasis was given to this in the opinion of Chief Judge LEHMAN in the *Good Humor* case (p. 318): " The fundamental question remains whether prohibition rather than regulation in this case is reasonable."

The judgment should be reversed and the complaint dismissed.

FOSTER, P. J., BERGAN, COON, HALPERN and ZELLER, JJ., concur.

Judgment reversed on the law and the facts and complaint dismissed, without costs.