Desmond, J.
(dissenting). I dissent from this destruction of a simple municipal ordinance for the protection of children in the Albany streets.
*698 Plaintiff Trio Distributor Corporation owns and operates in Albany several motor trucks from which during the summer months it sells, to customers on the streets and sidewalks of the city, ice cream and similar products packaged and refrigerated and bearing the “ Good Humor ” name and trade-mark. Each truck has one seat for a driver-salesman. Plaintiff’s trucks and its general method of doing business are similar to those used in many parts of the United States by distributors who like plaintiff Trio are licensed by Good Humor Corporation. Plaintiff Steffen is one of Trio’s driver-salesmen. Together, the plaintiffs bring this suit for a declaration of invalidity of a city ordinance adopted in 1956 by the Albany Common Council. The ordinance requires that every motor truck which, like plaintiffs ’, attracts and caters to, and from which sales are made to, children in the Albany streets shall have a crew of two persons, one of whom shall be “an attendant whose sole duty and occupation shall be to protect and safeguard the children from injury and the hazards of street vehicle traffic ” and who “ shall maintain a constant look-out for approaching vehicles and shall warn the children and guard them from injury ”.
Plaintiffs assert in this court that this ordinance is an unreasonable exercise of police power in that its real object is to destroy plaintiffs’ business for the benefit of local merchants, that it is too vague and ambiguous for enforcement and that it conflicts with section 54 of the State Vehicle and Traffic Law. Any one of these charges, if substantiated, would nullify the law. However, none of them has been sustained.
The legislative process which produced this ordinance began in 1955. In August of that year the council adopted a resolution which recited that the ‘ ‘ mobile vending ’ ’ of products especially attractive to young children causes youngsters to gather about the vendor’s vehicle with resulting danger of injury or death. The resolution authorized the presiding officer of the Common Council to appoint, and there was appointed from the council membership, a committee to investigate and report as to such uses of the Albany streets by those vendors and as to the measures, if any, taken by the operators of such vehicles to safeguard children. About a month later the committee made its report which dwelt on tire necessity for dealing with such street "risks and hazards, listed various safety methods used by school bus and camp bus operators, and described at length the *699 devices such as bright paint, bright lights on the trucks and bells and horns used by these street vendors to draw the attention and patronage of children. The report contained, too, a lengthy description of the work routine of the driver-vendor. When children appear he stops the truck, then takes his position in the street at the rear of the truck selling the confections to children who stand in the street in a widening semicircle behind the truck and mill about while other motor vehicles speed by. The committee report ended with a statement that a driver is unable to sell and deliver his products, collect the money and make change and at the same time do anything to protect his youthful customers. Since, said the report, these itinerant vendors for their own profit cause the children to gather in the streets, such vendors should be required to take affirmative protective measures. The ordinance as later adopted by the council was first proposed in this committee report.
In its first section the ordinance contains a legislative finding and declaration that “it is in the best interests of the public and for the welfare and safety of the young children in the City of Albany that those peddlers from vehicles of products attractive to and popular with children and inviting or causing children to gather and collect about such vehicles in the-carriageways of the public streets and public places, should be required to protect and safeguard such children from being struck by motor vehicles lawfully in the public streets and public places ”. Then follows the requirement for an extra attendant.
First, we take up plaintiffs’ charge that the real purpose behind this enactment was the destruction, for the benefit of local merchants, of a “ common and traditional use of the streets ” for vending (Good Humor Corp. v. City of New York, 290 N. Y. 312, 317). No such improper motive was shown here or found as fact by either court below, which sufficiently distinguishes this case from City of Buffalo v. Linsman (113 App. Div. 584) and other decisions cited by plaintiffs. This record contains nothing on the subject of motive or purpose except the committee report and the policy declaration and findings recited in the ordinance itself. Plaintiffs, for all we know, may have grounds for their suspicions but we as a court cannot act on those suspicions.
That the protection of children in the streets is a proper subject for legislation is patent (People v. George, 170 Misc. 707, *700 affd. 280 N. Y. 843; Good Humor Corp. v. City of New York, 290 N. Y. 312, supra; see People v. Rubin, 284 N. Y. 392, 395). Modern examples are the statutes forbidding an automobile to pass a standing school bus and creating special speed limits for streets near schools (Vehicle and Traffic Law, § 81, subd. 24; § 56, subd. 2, par. [b]). But, say appellants, this Albany ordinance is unreasonably oppressive. Plaintiffs’ operating costs will be so increased, they suggest, that profitable operation of this lawful business will be made impossible. Here, again, there is no proof at all in the record nor any findings by the courts below on this subject. And an otherwise valid regulatory law cannot be defeated by a showing that (like almost every such law) it imposes financial and other burdens on business (see Hegeman Farms Corp. v. Baldwin, 293 U. S. 163, 170). This ordinance, unlike the New York City enactment condemned in Good Humor Corp. v. City of New York (supra), is regulatory, not prohibitory. Within reason, the choice of methods for regulating a lawful business is for the Legislature. Plaintiffs’ own proof on this trial was that children, including very young ones, are the principal customers of this trade. It was shown as to the company which competes with plaintiffs in Albany that of its 700 daily sales per vehicle about 500 were made to children. The resulting dangers are exhibited in the committee report and the Common Council’s findings. We have no right to go behind those legislative determinations. Actually, plaintiffs themselves by warning signs on their trucks and elsewhere recognize the existence of these same dangers the Common Council points to. That there have been few accidental injuries, or none, to children is beside the point when we consider the validity of a safety law (City of Rochester v. West, 164 N. Y. 510, 514).
People v. George (170 Misc. 707, affd. 280 N. Y. 843, supra) is very much in point here, since it answers two of plaintiffs’ contentions. Defendant George attacked the validity of a White Plains, N. Y., ordinance which forbade the sale by any hawker or peddler of “ confectionery or ice cream within two hundred and fifty (250) feet of any school between the hours of eight a.m. and four p.m. on school days ”. As to the White Plains ordinance there were no legislative findings and no showing of what were the particular reasons for its enactment. The courts upheld it, however, applying the traditional pre *701 sumptions of constitutionality and finding a reasonable relationship to proper public purposes, including that of safety of children who make purchases in the streets. The George case is authority, too, against appellants’ argument from section 54 of the State Vehicle and Traffic Law. Section 54 denies to cities the power to enact ordinances regulating motor vehicle traffic except as such power is elsewhere specifically conferred. But section 90 of the same statute and section 30 of the Second Class Cities Law (applicable to Albany) are sufficient authority (see the George ease) for otherwise reasonable regulation of mobile street vendors.
Besides the supposed conflict with section 54 {supra), Special Term’s ground for invalidation was that the language of this Albany ordinance was too vague and indefinite or ambiguous for a criminal statute. The complaint in this action contains no allegation of any such defects. On the contrary, plaintiffs themselves allege in their complaint (paragraph Fourteenth) that the ordinance requires an additional attendant on each of their trucks to protect children from traffic hazards. This whole record shows that everyone knew of the applicability of the law to plaintiffs’ operations. The stated subject matter was the peddling in the Albany streets of ‘‘ products attractive to and popular with children ”, the congregating of children about such vendors in the streets and the resulting dangers, all of which makes out an accurate and complete description of the situation produced by the sales methods of plaintiffs and their competitor. The remedy is prescribed with equal particularity: the requirement of another attendant ‘ ‘ whose sole duty and occupation shall be to protect and safeguard the children from injury and the hazards of street vehicle traffic ” and who “ shall maintain a constant look-out for approaching vehicles and shall warn the children and guard them from injury ”. This is not a situation where a citizen is left in doubt as to the applicability to him of a criminal statute (People v. Benc, 288 N. Y. 318; Winters v. New York, 333 U. S. 507, 515, 516).
The majority opinion seems to say that the requirement of a second man is unrelated to the safety of children since such an employee would have no power or authority over the children and no rules or standards for performing his law-imposed duty of safeguarding the heedless youngsters. But in fact his duties are carefully spelled out: ‘‘ he shall maintain a constant look-out *702 for approaching vehicles and shall warn the children and guard them from injury.” Any person of normal intelligence could carry out that simple directive.
We see no present relevance (neither court below mentioned it) of a Sanitary Code provision, adopted not by the city but by the County of Albany and not presently being enforced, which requires hand-washing facilities on such trucks and forbids the driver from doing any selling. When and if these two enactments are enforced together to require three workers on each truck, it will be time enough to deal with the resulting situation.
The judgment appealed from should be affirmed, with costs.