40 N.Y.2d 158 (1976)
Jewish Reconstructionist Synagogue of the North Shore, Inc., Respondent-Appellant,
v.
Incorporated Village of Roslyn Harbor et al., Appellants-Respondents.
Court of Appeals of the State of New York.
Argued March 25, 1976.
Decided June 15, 1976.
George C. Pratt and Samuel S. Tripp for appellants-respondents.
John M. Farrell, Jr., for respondent-appellant.
Judges GABRIELLI, WACHTLER and COOKE concur with Judge FUCHSBERG; Chief Judge BREITEL concurs in result on the ground that the imposition of uncontrolled and uncontrollable expenditures, such as lawyer fees, should not be awarded except in accordance with standards expressed in authorizing legislation; Judge JASEN dissents in part and votes to modify in a separate opinion in which Judge JONES concurs.
*160 FUCHSBERG, J.
The question before us is whether a local government may require applicants for variances and special use permits before its board of zoning appeals to pay certain costs incurred by the board in the course of reaching its determination.
In a prior appeal between the parties, we held that the plaintiff was entitled to a variance and a special use permit for the property it had purchased in the village (38 N.Y.2d 283). At issue now is the village's Ordinance 22, which specifies that any applicant for a variance or a special use permit, other than one seeking a variance in connection with a single-family residence, shall, in addition to a set fee of $60 for the variance and $50 for the permit, pay the actual costs incurred by the board in passing on the matter. Section 1 of the ordinance specifically states that such costs may include: "(a) Advertising (b) Stenographic minutes of meetings (c) Engineering costs (d) Inspection costs (e) Legal fees (f) Recording fees." No precise amounts or ceilings are spelled out.
The village is a small one, almost exclusively residential. The application of the plaintiff, a religious corporation which purchased improved property for use primarily as a house of worship and religious school, provoked strong and organized opposition amongst its prospective neighbors. Consequently, *161 presumably because of the special interest engendered, the board of appeals hired a hall for the hearings instead of holding them at a member's home as had been customary, retained its own legal counsel, and ordered that the proceedings be stenographically recorded rather than following its more usual and less expensive practice of taping them. It also required that the minutes be transcribed and a copy provided for each of the five board members.
Save for the stenographer's attendance and recording fee, which the plaintiff was called upon to pay directly, the other items were charged against a fund which the plaintiff was required to deposit in advance with the village. The costs so charged were $2,561.50, of which $2,322.20 represented legal fees.[1] The direct payment to the stenographer amounted to an additional $1,000. Since no credit was given for the $110 in fees for filing the variance and use permit applications, the total cost to the plaintiff was $3,671.50.
In this declaratory judgment action, the plaintiff does not raise any question about the reasonableness of the rates at which each of the items was incurred. Instead, it contends that the village is without statutory authority to impose such open-ended costs upon an applicant before the board. On its motion for summary judgment, made pursuant to CPLR 3212, Special Term found that the charges for publication of notice, for stenographic attendance and recording, and for engineering and inspection fees were properly levied and that, to the extent section 1 provided for them, it was valid. It disallowed the charges for the board's legal fees, for the rental of the meeting hall, and those for transcribing and providing copies of the minutes, holding that section 1 could not authorize them. However, it left open the disposition of the last item until there had been a factual determination of whether the transcribing and copying had been at the instance of the board or of the plaintiff.[2] The Appellate Division affirmed the ensuing judgment without opinion. Both sides having now appealed to us, for the reasons which follow we uphold the order of affirmance.
*162 Preliminarily, it should be noted that the board of zoning appeals is a quasi-judicial body created by State law (Village Law, § 7-712). It provides a forum for the mitigation of harsh effects which zoning laws may have in exceptional cases (see 1 Anderson, New York Zoning Law and Practice [2d ed], §§ 17.07-17.12, pp 731-736; Bassett, Zoning Practice in the New York Region: Comprising a Series of Aids to the Practice of Zoning, a Statement Regarding the Application of Zoning in New York City, and a Model State Enabling Act with Annotations [1926]; cf. Katz v Board of Appeals of Vil. of Kings Point, 21 AD2d 693; Weiss v Village of Lindenhurst, 144 NYS2d 228; Daly v Eagan, 77 Misc 2d 279). As we earlier decided (38 N.Y.2d 283, 290-291, supra), this plaintiff had indeed brought before the board a case of hardship entitling it to relief from overrestrictive ordinances. In doing so, it had not sought to be endowed with a mere benefit, but had pressed for the vindication of a right.
That a right rather than a benefit is being pursued is of special significance in the context of this case. It is no doubt at the heart of the reason why, as the zoning expert and commentator whose work was instrumental in the formulation of the State enabling legislation (see Village Law, § 7-712; Town Law, § 267) has noted, the appellate jurisdiction of the board in hardship cases is fully and independently developed in our State statutes and not subject for its existence to the vagaries of the presence or absence of supplemental local enactment (Bassett, Zoning Practice in the New York Region: Comprising a Series of Aids to the Practice of Zoning, a Statement Regarding the Application of Zoning in New York City, and a Model State Enabling Act with Annotations [1926], at pp 24-25). Correspondingly, an ordinance should be scrutinized more carefully for its inhibitions against the pursuit of such a right as distinguished from a benefit. For the justification which underlies fee structures has most often been expressed as a visitation of the costs of special services upon the one who derives a benefit from them (see Matter of Hanson v Griffiths, 204 Misc 736; City of Buffalo v Stevenson, 207 N.Y. 258; People v Malmud, 4 AD2d 86; People v Brooklyn Garden Apts., 283 N.Y. 373; Fox v Kern, 12 NYS2d 561).
Significant also is that the legislation under which villages set up boards of zoning appeals does not specify how their expenses are to be paid (Village Law, § 7-712, subd 1). In analogous situations, we have held that the Legislature's *163 mandate carries with it an implied limited delegation of power to the local government to enact ordinances necessary to carry out the legislative plan (see Village of Carthage v Frederick, 122 N.Y. 268; City of Buffalo v Stevenson, 207 N.Y. 258, supra). The question thus still remains whether the provisions of the ordinance under which the charges in this case were exacted went beyond the bounds of the limited authority to the village.
The open-ended, indeed unlimited, nature of the fees which it authorizes therefore makes the ordinance vulnerable to attack on the ground that it overreaches the State statute's implied grant of power to the village. For when the State's jealously guarded police power is delegated to a local government or to its agencies, it must be accompanied by standards which guide and contain its use (Matter of Fink v Cole, 302 N.Y. 216; 8200 Realty Corp. v Lindsay, 27 N.Y.2d 124; Matter of Small v Moss, 279 N.Y. 288, 295; City of Amsterdam v Helsby, 37 N.Y.2d 19, 27, 36). As a consequence, when the power to enact fees is to be implied, the limitation that the fees charged must be reasonably necessary to the accomplishment of the statutory command must also be implied (City of Buffalo v Stevenson, supra, at pp 261-262).[3]
The fees also "should be assessed or estimated on the basis of reliable factual studies or statistics" (9 McQuillan, Municipal Corporations, § 26.36, p 89; see, also, Bon Air Estates v Village of Suffern, 32 AD2d 921; Matter of Hanson v Griffiths, 204 Misc 736, supra; People v Malmud, 4 AD2d 86, supra). Put another way, the yardstick by which the reasonableness of charges made to an applicant in an individual case may be evaluated is the experience of the local government in cases of the same type. Without the safeguard of a requirement that fees bear a relation to average costs, a board would be free to incur, in the individual case, not only necessary costs but also any which it, in its untrammeled discretion, might think desirable or convenient, no matter how oppressive or discouraging they might in fact be for applicants.
*164 That is not to say that classes of applicants may not be established. Experience may indicate that average costs justify distinctions among different kinds of applicants, describable by objective criteria such as, for instance, whether they are involved in residential as distinguished from nonresidential uses. Or categories may revolve around such determinants as the size or value of the property at issue. Where classifications are rational, fees for each class may be based on its average (see Matter of Hanson v Griffiths, supra, upholding classifications of filing fees in Surrogate's Court by the size of the estate involved). Thus, if a village can demonstrate that a class of applicants generally requires a board to incur costs greater than those usually attendant upon applications for those in another classification, it may establish such a class and may establish its fee schedule accordingly.
But, obviously, a fee is not average when it is based on a sample of one. Here the village acknowledges that the plaintiff's application was the only one of its kind received by it in many years, if ever. Yet, it legislated liability for whatever expenses the board unilaterally might decide to incur in a case involving such an applicant without making any attempt whatsoever, so far as the record shows, to determine whether the resulting charges would be so extensive that they would tend to discourage those seeking relief by appeal to the board. Nor is there even the slightest indication of any effort made to avoid idiosyncratic or atypical charges by ascertaining what prevailing practices had been developed over a range of experience by other villages of comparable size on the basis of their average experience.
It is not just the amount of the fees alone which is here involved. At stake are the terms upon which citizens may have access to a governmental function and their right to have those terms, whether or not they are in the form of fees, fixed by standards which lend assurance that they are not "unreasonable, discriminatory nor oppressive" (Trio Distr. Corp. v City of Albany, 2 AD2d 326, 329). Furthermore if fees for seeking relief from an unduly burdensome zoning ordinance can be tailored by a board to an individual case without reference to whatever is usual or average in other such cases, the appearance of a potential for abuse or discrimination may arise, whether one actually occurs or not. Manifestly, ready accessibility of judicial and other mandated governmental functions is too important for that accessibility and its appearance *165 of accessibility to be impaired by the insufficiently delineated fee system in this case, designed, as defendant admits it was, to guarantee that the community's taxpayers bear no share of the expense of maintaining the mandated function of government which the board was carrying out. That requirement puts too exclusive an obligation on the individual to bear the entire cost of a governmental function whose very existence is in furtherance of the general welfare (cf. French Investing Co. v City of New York, 39 N.Y.2d 587, 595-597).
In light of these legal and governmental values, Special Term's finding that the charges for the cost of publishing the notice required by statute and for the cost of the necessary technical, information-supplying engineering and inspection reports were not in excess of what was necessary in order to carry out the statutory mandate can be supported. While the ordinance does not set out guidelines as to the fees for those items, the wide range of other cases in which such services are commonly employed, as a result of which such charges have come to be fairly uniform and predictable, provides assurance that the board's power to assess them on a case-by-case basis is not unlimited or unanticipatable (see 2 Rathkopf, Law of Zoning and Planning, § 6, p 55-15, and cases cited therein).
On the other hand, the charges for legal fees, those for transcribing the record of the proceedings and supplying copies of it to each board member,[4] and those for the rental of a capacious auditorium in which large numbers of spectators could be accommodated at each of the board's sessions, stand on a different footing. They did not represent necessary expenditures but rather conveniences to the board for fulfillment of what in the end was its own decision-making responsibility (see 12 Opns St Comp, 1956, p 374; 21 Opns St Comp, 1965, p 483).
It cannot be gainsaid that the convenience of individual copies of the transcript provided advantages over reliance on memory, note-taking and resort to playback of the recording. But, basically, convenience it was, and not necessity (cf. Matter of Hunter v Board of Appeals of Vil. of Saddle Rock, 4 AD2d 961). Furthermore, the extent to which such charges could mount was utterly dependent on how many and how *166 long would be the sessions over which the board would permit the proceedings to stretch.
The trackless uncertainty was even greater with respect to the automatic charging of the applicant for the excellent legal services of which the board availed itself. Its choice of counsel, the extent to which it chose to rely on their services, indeed whether to engage them at all, rested entirely with the board alone. Of course the board was free, and perhaps wise, to exercise these prerogatives, but the imposition of their cost on the plaintiff was something else again. It would have disproportionately and impermissibly conditioned the availability of the board as a tribunal on an applicant's readiness to undertake an obligation delimited by things as indefinite as the vigor and determination of zealous opponents or the happenstance that the points at issue might turn out to be unexpectedly intricate.
Thus, since the ordinance permitted the charges for the actual cost of these items to the applicant without so much as a point of reference grounded in data from similar cases, it is, to say the least, impossible to assess whether any or all of the charges so incurred were necessary to the accomplishment of the board's decision-making function or merely convenient to it. For these reasons, they must be said to be beyond the limitations of the power delegated under the statute.
Accordingly, the judgment appealed from should be affirmed.[5]
JASEN, J. (dissenting).
While the majority concedes that a village is empowered to impose various charges upon persons making applications in zoning matters for the purpose of assuring that it will be indemnified for the expenses incurred in processing such applications, it concludes that the village may not compel reimbursement for certain expenses authorized by Ordinance 22 of the Village of Roslyn Harbor because the ordinance "overreaches the State statute's implied grant of power to the village". I cannot agree. I would hold that a municipality is empowered to require, by local ordinance, that *167 a person making an application in certain types of zoning matters indemnify the municipality for its actual expenses in processing the application, provided said expenses are reasonable in amount and necessarily incurred in processing the application.
The Jewish Reconstructionist Synagogue of the North Shore, Inc., is a religious corporation which in 1970 purchased improved property in the Village of Roslyn Harbor. Hoping to use the land and buildings for a place of worship and related activities, it applied, in February, 1971, to the board of appeals for a conditional use permit required by the village's zoning ordinance, for a side-yard variance and for permission to construct an accessory structure. The application was vigorously opposed at the hearings by village residents, represented by their own retained counsel, striving to maintain the residential character of the neighborhood. After protracted litigation, including two appeals argued to this court, we upheld a determination by the lower courts that the zoning ordinance was unconstitutional insofar as it prevented the village board of appeals from granting the Synagogue a permit to use and occupy these premises for religious purposes. (Jewish Reconstructionist Synagogue of North Shore v Incorporated Vil. of Roslyn Harbor, 38 N.Y.2d 283.) At issue in the case now before us is the validity of the village's Ordinance 22, commonly referred to as the "fee ordinance", which requires persons making certain types of applications to the board of appeals, the board of trustees, and the planning board to indemnify the village for specified expenses incurred in processing the applications, including expenses for advertising, stenographic minutes, engineering and inspection costs, legal fees and recording fees.[1] These charges are in addition to filing fees imposed *168 under section 2 of the ordinance.[2] Subdivision (f) of section 3 requires the applicant to deposit with the village $200 to cover expenses reimbursable under section 1. In the event the initial deposit proves insufficient to cover these expenses, section 4 empowers the board to require additional deposits. The same section provides that if the amounts deposited exceed such expenses at the conclusion of the particular application the unused portion of the deposit shall be returned upon the request of the applicant. Significantly, section 5 provides that the village board or official involved shall take no action on the application unless and until all required fees and deposits have been paid.
Pursuant to these sections, the Synagogue was compelled to deposit with the village the sum of $2,765.35. In this action it sought to recover that sum, as well as the sum of $1,000 claimed to have been paid by the Synagogue to a court stenographer to record the proceedings. On the Synagogue's motion for summary judgment, the trial court, while largely upholding the validity of the ordinance, held that three items of expense could not be charged to the Synagogue: (1) the cost of transcribing the minutes of the hearings and furnishing copies thereof to the members of the board; (2) the cost of the board's legal fees; and (3) the cost of renting a meeting hall large enough to accommodate all those who attended.[3] It did permit the village to retain the amounts charged to pay the cost of advertising, the recording (stenographically or otherwise) of the minutes of board of appeals hearings, engineering costs, inspection costs, and recording fees, and held that the amounts charged for these items were reasonable. The Appellate Division affirmed, without opinion.
As the majority concedes, it has long been the rule that a village is not restricted to the exercise of its specifically granted powers but possesses also such powers "as are necessarily *169 incident to, or may fairly be implied from, those powers". (Village of Carthage v Frederick, 122 N.Y. 268, 271; cf. Schieffelin v Hylan, 236 N.Y. 254, 260-261; see, generally, 2 McQuillan, Municipal Corporations [3d ed], § 10.12.) Likewise, the village, through its board of trustees, "has the implied power to require payment in advance of a reasonable fee to reimburse the village for the expenses necessarily involved for a change of zoning or granting of a variance." (12 Opns St Comp, 1956, p 374.) This comports with the more general rule that reasonable fees may be charged for various types of permits and licenses. (See City of Buffalo v Stevenson, 207 N.Y. 258; see, generally, 2 Rathkopf, Law of Zoning and Planning, ch 55, § 6; 9 McQuillan, Municipal Corporations, § 26.32 et seq.) The sound theory upon which this power is predicated is that "the expense entailed * * * should be borne by the persons, for whose advantage and profit it is occasioned, rather than that it should be imposed upon the taxpayers." (City of Buffalo v Stevenson, 207 N.Y. 258, 262, supra.) This power flows directly from the village's duty to establish a board of appeals and to hear and decide various applications. (Village Law, § 7-712.) The sole qualification is that the village may seek indemnification only for such expenses as are reasonable in amount and necessarily incurred.
The majority, in affirming the orders of the Appellate Division, holds that the village is empowered to require indemnification of the actual expenses incurred in processing the application, such as the cost of advertising, recording the hearings, engineering review, inspection fees and recording fees. At the same time the majority denies reimbursement for the expenses incurred by the village for legal fees and in making copies of the transcript of the proceedings upon the ground that the ordinance authorizing such reimbursement "overreaches the State statute's implied grant of power to the village."
I cannot agree with this view. It seems to me that the test should be, as to all expenses sought to be imposed upon the applicant, whether the expenses were reasonable in amount and necessarily incurred in processing the application for a variance. If they were, the village should have the right to be reimbursed for the expenses incurred.
No elaboration is required here as to the first prong of this test, as the Synagogue concedes that each of the expenses was reasonable in amount. Concerning the second prong, I conclude *170 that all but one of the charges for which the village sought reimbursement under the ordinance was necessarily incurred in processing the application and, therefore, subject to reimbursement.[4] Since the majority agrees that some of the expenses were reimbursable, I need only to discuss the items which it disallows.
I conclude first of all that the cost of making six copies of the transcript, one for each member of the board, was properly charged to the Synagogue.[5] Although each meeting of the board was tape recorded, a transcript was made only when the board was presented with a complicated or contested application. Otherwise, the members of the board found their own handwritten notes adequate, with the tape recording always available for purposes of verification. The cost of recording the proceedings was reimbursable under subdivision (b) of section 1 of the fee ordinance. In affirming the order of the Appellate Division, the majority agrees that the village properly charged the applicant for the costs involved in tape recording the minutes of the meeting.[6] Since transcription, where necessary, is a logical incident to the recording of the proceedings, I conclude that the village properly charged the applicant for *171 the costs involved in copying the transcript so as to provide each board member with a copy. The majority's statement that this was merely for the convenience of the board goes too far, especially since it has been stipulated that each side bore equal responsibility for furnishing these copies to the board members. Given the volume of the transcript  400 pages  I would view this as more of a necessity than a convenience.
The remaining item, the board's legal fees, is the charge most strongly contested by the Synagogue because, not unexpectedly, it was the largest item of expense, $2,322.20. While not questioning the reasonableness of the fee, Special Term nevertheless held that this was not properly chargeable to the applicant. The sole rationale given by that court was that "the amount of legal fees to which an applicant might be subjected would be completely unpredictable and impossible of estimation beforehand." The majority adopts this rationale in only slightly different language, terming the charge "open-ended". I am not persuaded that this is a sufficient legal basis for disallowing the charge. As I have already stated, the sole test as to all expenses sought to be imposed upon the applicant should be whether the expense was reasonable in amount and was necessarily incurred in processing the application. Given the complexity of the matter and the degree of opposition, the board, sitting in its quasi-judicial capacity, wisely chose to hire legal experts to give advice and counsel. This much is conceded by the majority. In my view, then, this expense was "necessarily incurred" by the board. Since the charge was necessarily incurred, it is of no significance that the amount of the charge was difficult to predict beforehand. In any event, some estimate of the amount of the legal fees can be made, as they will almost always increase as a function of the intensity of the opposition. Sensing strong opposition (here requiring hearings on three separate days), the Synagogue should have been in a position to anticipate the extent to which the board of appeals would seek legal counsel to assist it in passing on the legal issues presented by this application. In this sense, the board's legal expenses, based as they were on a reasonable hourly charge, were no less capable of estimation than were the legal fees incurred by the Synagogue itself in retaining private counsel to represent it at the hearing. To the extent that these charges could not have been estimated at the time the application was made, this becomes merely one more risk inherent in seeking zoning concessions when members of the *172 community with sufficient resources resolve to defeat applications for zoning exceptions which might disrupt the residential character of the neighborhood. Such opposition springs not from the board, which sits in an impartial, quasi-judicial capacity, but from these other members of the community, who themselves retain counsel, as they did here, to advocate their position.
In addressing an issue not presented in this appeal, the majority states that (p 163) "the yardstick by which the reasonableness of charges made to an applicant in an individual case may be evaluated is the experience of the local government in cases of the same type." This discussion of the reasonableness of the charges here seems incongruous because Special Term specifically stated that it did not question their reasonableness and, as the majority correctly notes, the Synagogue likewise does not assert that they are not reasonable in amount. Aside from the wisdom of discussing this matter which is not even in issue here, the test set out by the majority imposes, at least in this case, an impossible burden upon the village as, in fact, there are no "cases of the same type." The Board of Appeals of the Village of Roslyn Harbor each year passes on a "dozen or so" routine applications relating to single-family residential uses. These applications are rarely contested, and the filing fees set by subdivision (a) of section 2 of the fee ordinance generally match the village's expenses in processing them. Applications not dealing with single-family residential uses, however, are more likely to be challenged, and therefore may be more costly for the village to process. In recognition of the fact that in such cases the usual filing fees alone will not compensate the village for its expenses, the fee ordinance establishes a procedure which will insure that the village will be fully indemnified. The application involved in this case is characterized as "the most strongly contested application * * * ever * * * in the Village of Roslyn Harbor", with the expenses incurred by the village (approximately $3,000) greatly exceeding the filing fees paid. This, in my view, illustrates the wisdom behind the fee ordinance, in that it requires each applicant to bear the expenses generated by his own application, while preventing the dual evils of prorating such expenses over all applications[7] *173 and of requiring the village to absorb the expenses itself.[8]
In sum, the test imposed by the majority will make it impossible for a small, residential village like Roslyn Harbor to ever recoup its expenses in the rare but inevitable nonresidential zoning application, which, because of the opposition of the village's residents, will necessarily require the village to incur thousands of dollars in unanticipated expenses, expenses for which the budget makes no provision. Because of the rarity of applications of this type in this residential community, there is no wide range of experience from which an average cost figure can be calculated. Rather than select an arbitrary figure, and reluctant to bear the unexpected costs itself, the village, through this ordinance, has chosen to charge applicants for the additional costs actually incurred in processing the application. In my view this is a legitimate exercise of the village's implied power already discussed.
Our court has previously held that no substantial constitutional question is raised by the Synagogue's contentions advanced here in opposition to the requirement of the ordinance that the applicant pay extraordinary legal fees incurred by the village. (Jewish Reconstructionist Synagogue of North Shore v Incorporated Vil. of Roslyn Harbor, 36 N.Y.2d 806.) Since no reason has been presented for departing from this earlier ruling, if this portion of the ordinance is to be invalidated, it must be on some nonconstitutional ground.
I can agree that, were the issue before us one of policy rather than of law, arguments could perhaps be mounted in opposition to requiring an applicant for zoning change to pay extraordinary legal expenses incurred by a village even though it was necessary for the village to incur the legal expense and the amount of such expense was reasonable. The *174 issue tendered for our resolution, however, is not whether our court would have decided this policy question as did the Village of Roslyn Harbor; the issue is rather whether it was unlawful for the village to decide the policy question as it did.
It has not been demonstrated, either by the Synagogue or by the majority of the court, that the ordinance incorporating the village board's decision runs afoul of any legislative enactment or judicial decision that forecloses its adoption. Indeed, the majority simply characterizes the board's action as an excess of the implied authority delegated by the Legislature to villages. With this characterization I do not concur, and I therefore cannot agree with the substitution of this court's resolution of a question of policy for that of the village board, acting in the exercise of its legislative function.
Accordingly, I vote to modify the order of the Appellate Division brought up for review and the final judgment appealed from in accordance with the foregoing opinion.
Judgment affirmed, without costs.
NOTES
[1] It should be noted that the legal fees in question are solely those incurred by the board prior to its decision on the plaintiff's application; the village's legal fees in the case before us now or in the litigation which ensued after the board's decision, were borne by itself.
[2] This factual finding, affecting nonfinality of the judgment appealed here, has been stipulated out of the case.
[3] The constitutionality of the ordinance before us is not directly in issue here; indeed we have already ruled that it is unnecessary to reach that question in this case (36 N.Y.2d 806). The question is, rather, how much power the Legislature intended to confer upon local governments under section 7-712 of the Village Law, and we approach that question with the assumption that the Legislature did not intend to confer any more power than it may delegate constitutionally (see Matter of Van Berkel v Power, 16 N.Y.2d 37).
[4] Special Term also upheld the validity of the charges for making the stenographic record.
[5] It should be noted that, by stipulation, the parties, after the decision at Special Term, agreed to share the charges for transcribing and reproducing copies (as distinguished from recording) of the minutes of the proceedings equally. The final judgment entered thereafter accurately reflects that stipulation so that, while Special Term was correct in invalidating the charges for transcribing and making extra copies of the minutes, that finding has become academic in this case. With regard to the cost of renting the auditorium, the situation is made still simpler because, as Justice SUOZZI correctly noted at Special Term, even the ordinance does not provide for such a charge.
[1] Section 1 of the ordinance provides in full:

"On all applications to the Board of Appeals, Board of Trustees and Planning Board except a request for a variance relating to a single family residential use, the renewal of a variance or permit relating to a single family residential use, a request for a sign permit or a request for a temporary structure permit, the applicant shall be liable to the Village for and shall pay the following costs which may be incurred by the Village in processing the application:
"(a) Advertising
"(b) Stenographic minutes of meetings
"(c) Engineering costs
"(d) Inspection costs
"(e) Legal fees
"(f) Recording fees."
[2] In this case the filing fees totaled $110, representing $60 for the request for a variance (subd [a], par [1]) and $50 for the request for a special use permit (par [7]).
[3] The record indicates that at the time this application was made the Village of Roslyn Harbor had no village hall. Meetings normally were held in the home of the village clerk. No more than 10 or 12 persons could be handled comfortably in this manner. Since over 100 people attended the hearings on this application, the village rented the Engineer's Club for the three evenings on which these hearings were held. This club was the only meeting hall in the village large enough to accommodate the crowd which attended the hearings. The rental charge for the three evenings was $85, an amount which corresponds to the fees paid by the village on previous occasions.
[4] The only item for which the village could not properly seek reimbursement was its expense in renting the meeting hall. While this expense may well have been reasonable in amount and necessarily incurred, nothing in the fee ordinance permits reimbursement for such an item.
[5] Special Term ruled that if "the Village trustees deem it desirable to provide transcripts as a convenience to Board members * * * that expense should more properly be borne by the Village than by the applicant." However, the court denied summary judgment with respect to this item because of the unresolved factual dispute "as to whether this transcript was provided by the applicant to expedite the Board's review of the minutes, as claimed by the defendant, or required by the defendants, as claimed by the plaintiff." It was the existence of this unresolved factual matter which forced us to dismiss an earlier motion and cross motion for leave to appeal on grounds of nonfinality. (34 N.Y.2d 934.)

The costs relative to the transcription were twofold. First, an expense of $1,000 for attendance and typing was charged by a court reporter retained by the Synagogue. This charge was not paid by the village, and it is not clear from the record whether it was paid directly by the Synagogue. Second, the village charged the Synagogue $240 for reproducing six copies of the 400-page transcript, at 10 cents per page.
In order to circumvent the finality problem, the parties stipulated to the following facts: first, that "[t]he total cost of the transcript and extra copies of the minutes of hearings furnished by plaintiff to the Village Board of Zoning Appeals was $240.00"; and, second, that "[p]laintiff and the defendants bear equal responsibility for having had said transcript and copies furnished to the Village." Thus, the Synagogue has abandoned its claim for the reporter's fee of $1,000, and we need be concerned here only with the $240 copying charge.
[6] The majority incorrectly states that these hearings were not tape recorded.
[7] A distribution of such expenses over all applications would make the filing fees prohibitively high in most cases. Assuming the correctness of the village clerk's estimate of "a dozen or so" routine applications annually, such applications would generate total annual filing fees of no more than $500 under section 2 of the ordinance. If the costs generated by the application in this case, about $3,000, was spread over all the applications received in that year, each person making a "routine application" would be required to pay several hundred dollars in filing fees. Of course, the practical difficulty of having the filing fees match the expenses is that such fees are set in advance, by ordinance, based presumably upon past experience. Such a system makes it very difficult to anticipate, and provide for, the rare application that generates thousands of dollars in expenses.
[8] This latter alternative could have deleterious effects on the village's budget. Roslyn Harbor, a village of only 1,125 residents in 1970 functions on a small budget ($86,000, for example, in the fiscal year 1972-1973). Quite understandably, it is unwilling to bear an additional unexpected expense of several thousand dollars which might result from a contested application such as the one involved here.